THE STATE EX REL. WRIGHT, APPELLEE, *v.* OHIO
ADULT PAROLE AUTHORITY, APPELLANT.

[Cite as *State ex rel. Wright v. Ohio Adult Parole
Auth.* (1996), 75 Ohio St.3d 82.]

(No. 94–1222—Submitted January 10, 1996—Decided March 4, 1996.)

*Robert J. Churilla,* for appellee.

*Betty D. Montgomery,* Attorney General, and *Todd R. Marti,* Assistant Attorney General, for appellant.

---

ALICE ROBIE RESNICK, J.   The sole substantive issue presented by this appeal is whether the exclusionary rule applies to parole revocation proceedings.

I

However, before reaching the exclusionary rule issue, we will consider a matter which has not been raised by the parties—whether the order appealed from was a final appealable order.

Under Section 2(B)(2)(a), Article IV of the Ohio Constitution, appeals may be taken to the Supreme Court as a matter of right in cases originating in the courts of appeals, including actions on extraordinary writs.   R.C. 2505.03 restricts the appellate jurisdiction of any court, including the Supreme Court, to the review of final orders, judgments or decrees.   R.C. 2505.02 defines a "final order" as *inter alia,* "[a]n order that affects a substantial right * * * which in effect determines the action * * *."   The order appealed from here appears to fit this definition because it affects a substantial right and determined at least one of appellee's claims.   Furthermore, since the order obligated the APA to hold a new parole revocation hearing, the order determined the action as to appellee's argument concerning the exclusionary rule.

However, an order of a court is a final appealable order only if the requirements of both R.C. 2505.02 and, if applicable, Civ.R. 54(B), are met. *Chef Italiano v. Kent State Univ.* (1989), 44 Ohio St.3d 86, 541 N.E.2d 64, syllabus.

Civ.R. 54(B) provides:

"When more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, and whether arising out of the same or separate transactions * * *, the court may enter final judgment as to one or more but fewer than all of the claims * * * only upon an express determination that there is no just reason for delay. In the absence of a determination that there is no just reason for delay, any order or other form of decision, however designated, which adjudicates fewer than all the claims * * *, shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

Issues of fact raised by the pleadings in mandamus actions "must be tried, and further proceedings thereon had, in the same manner as in civil actions." R.C. 2731.09. Civ.R. 54(B) applies to pertinent civil actions and is not clearly inapplicable to mandamus proceedings. See Civ.R. 1(C)(7). The applicability of Civ.R. 54(B) is bolstered when one considers that Section 1 of Loc.App.R. 11 of the Court of Appeals for Franklin County expressly provides that mandamus actions filed there "shall proceed as any civil action under the Ohio Rules of Civil Procedure." Consequently, the mere fact that a proceeding involves the extraordinary writ of mandamus does not make Civ.R. 54(B) inapplicable. The same policies underlying Civ.R. 54(B) (in particular the policy of preventing piecemeal litigation) in ordinary civil actions also apply to mandamus actions filed in the court of appeals. Therefore, we hold that Civ.R. 54(B) applies in determining the appealability to the Supreme Court of orders in original actions, such as mandamus, entered by a court of appeals.

Once applicable, Civ.R. 54(B) must be followed, by its terms, when a case involves multiple claims and/or multiple parties. An order adjudicating one or more but fewer than all the claims or the rights and liabilities of fewer than all the parties must meet the requirements of R.C. 2505.02 and Civ.R. 54(B) in order to be final and appealable. *Noble v. Colwell* (1989), 44 Ohio St.3d 92, 540 N.E.2d 1381, syllabus. This case does not involve multiple parties; however, because it may involve multiple claims, we must consider the application of Civ.R. 54(B), given our conclusion above that Civ.R. 54(B) applies.

Appellee, in his complaint at the court of appeals seeking reinstatement of his parole and release from prison, styled his two arguments as two "claims for relief": (1) the APA failed to give him a final parole hearing within a reasonable

time, in violation of R.C. 2967.15(A), and (2) the APA erroneously relied on the evidence obtained by Fisher and the police in their illegal searches of his residence in the parole revocation determination. The court of appeals granted a limited writ of mandamus without discussing the first argument. For our Civ.R. 54(B) analysis, we must determine if appellee's arguments were two distinct "claims for relief" in Civ.R. 54(B) parlance. If appellee did present two distinct claims for relief, we must examine the way the court of appeals handled them to determine if it was necessary for the court to include Civ.R. 54(B) language, indicating that "there is no just reason for delay" in order to make the order appealable.

Civ.R. 54(B) is based on Fed.R.Civ.P. 54(b), see Staff Notes to Civ.R. 54(B)—therefore, we look for guidance to authorities interpreting the federal rule. If claims are factually separate and independent, multiple claims are clearly present. 10 Wright, Miller & Kane, Federal Practice and Procedure (2 Ed.1983) 63, Section 2657. Two legal theories that require proof of substantially different facts are considered separate claims for purposes of Civ.R. 54(B). See *N.A.A.C.P. v. Am. Family Mut. Ins. Co.* (C.A.7, 1992), 978 F.2d 287, 292. Civ.R. 54(B) was amended, effective July 1, 1992, to expressly state that it does apply to multiple claims that arise out of the same transaction, as well as separate transactions (just as Fed.R.Civ.P. 54[b] has been construed to apply). See Staff Note to July 1, 1992 Amendment to Civ.R. 54(B).

In examining appellee's two grounds for relief argued in the mandamus action, it becomes apparent that appellee raised two separate claims for relief for Civ.R. 54(B) purposes. The claims are based on substantially different facts, and distinctly separate legal theories are implicated, *i.e.*, the first claim involved compliance with R.C. 2967.15(A) and the second claim involved application of the exclusionary rule.

Because of the nature of appellee's first claim and the manner of resolution of the second claim by the appellate court, we find that the failure to specifically address the R.C. 2967.15(A) claim, and the absence of Civ.R. 54(B) language, do not deprive this court of jurisdiction to hear this appeal in the unique circumstances of this case. A thorough review of the relevant circumstances makes apparent that the court of appeals, in the way it resolved this case, implicitly rejected appellee's first claim for relief.

Both of appellee's "claims for relief" had the same goal—appellee sought outright release from prison and reinstatement of his parole. The court of appeals granted a limited writ ordering the APA to hold a new parole hearing, but refused to grant appellee the full relief requested. If the court of appeals had accepted appellee's argument concerning the failure of the APA to hold a timely hearing, the new hearing would not have been an option. In that case, the

court of appeals would have had to grant appellee the outright relief he sought, release from prison. Since the court of appeals obviously did not grant this outright relief, we find that under these circumstances the court of appeals rejected the untimeliness claim out of hand, with that rejection implicitly reflected in its order. While we believe the better course would have been for the court of appeals to briefly address and explicitly reject appellee's first claim for relief, we find it in furtherance of judicial economy to proceed with a disposition of the merits of this case rather than to further delay.

For all the foregoing reasons, we determine that both claims of appellee were in effect adjudicated by the court of appeals' order, so that the absence of Civ.R. 54(B) language does not prevent this court from entertaining 'this appeal.

II

Having determined that this court has jurisdiction to entertain this appeal, we proceed to consider the merits. In order to be entitled to a writ of mandamus, appellee had to establish that he possesses a clear legal right to the writ, that the APA has a clear legal duty to perform the new hearing applying the exclusionary rule, and that he has no plain and adequate remedy in the ordinary course of law. *State ex rel. Howard v. Ferreri* (1994), 70 Ohio St.3d 587, 589, 639 N.E.2d 1189, 1192.

The substantive issue in this case is whether the exclusionary rule applies to parole revocation proceedings. The court of appeals, relying on *Burkholder*, concluded that it did, and found that the APA considered improperly seized evidence at the final parole revocation hearing.

Appellant first argues that the court of appeals erred in applying the *Burkholder* holding, which involved probation revocation, to this parole revocation case. The court of appeals determined that since "a probationer's constitutional rights with respect to a revocation hearing are no greater and do not differ from those of a parolee," *Burkholder* should apply to parole revocation proceedings.

We agree with the court of appeals on this question. This court has noted that *Burkholder* stands for the proposition that there is "no material difference between probationers and parolees in the context of constitutional guarantees." *State v. Roberts* (1987), 32 Ohio St.3d 225, 229, 513 N.E.2d 720, 723. This position is consistent with considerations of constitutional rights in revocation proceedings in general. See *Gagnon v. Scarpelli* (1973), 411 U.S. 778, 782, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656, 661–662, fn. 3 ("Despite the undoubted minor differences between probation and parole, the commentators have agreed that revocation of probation where the sentence has been imposed previously is constitutionally indistinguishable from the revocation of parole."). It is also consistent with application of the exclusionary rule to revocation proceedings in particular. See,

generally, Annotation, Admissibility, in State Probation Revocation Proceedings, of Evidence Obtained Through Illegal Search and Seizure (1977), 77 A.L.R.3d 636, 641, Section 2(b) ("The rules governing the admissibility of evidence obtained through illegal search and seizure are the same for probation revocation proceedings as for parole revocation proceedings.").

Although we agree that the court of appeals was correct in applying the precedent established in *Burkholder* to this case, we believe the time has come to reexamine *Burkholder* and the assumptions upon which that decision was based.

*Burkholder* relied upon Section 14, Article I of the Ohio Constitution, rather than merely upon the Fourth Amendment to the United States Constitution. Section 14, Article I has been interpreted to "protect the same interests and in a manner consistent with the Fourth Amendment." *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271, 1273, fn. 1. In his brief filed here, appellee claims that his mandamus claim was premised on the Fourth Amendment and does not assert greater rights under the state constitutional provision. Accordingly, authorities interpreting the federal Constitution are relevant.

In *Arizona v. Evans* (1995), 514 U.S. ——, ——, 115 S.Ct. 1185, 1191, 131 L.Ed.2d 34, 44, the Supreme Court of the United States, while considering the relationship between the Fourth Amendment and the exclusionary rule, recently stated:

" 'The question whether the exclusionary rule's remedy [of rendering evidence obtained through an unreasonable or unlawful search and seizure inadmissible] is appropriate in a particular context has long been regarded as an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.' *Illinois v. Gates,* 462 U.S. 213, 223 [103 S.Ct. 2317, 2324, 76 L.Ed.2d 527, 538–539] (1983); * * *. The exclusionary rule operates as a judicially created remedy designed to safeguard against future violations of Fourth Amendment rights through the rule's general deterrent effect. * * * As with any remedial device, the rule's application has been restricted to those instances where its remedial objectives are thought most efficaciously served. * * * Where 'the exclusionary rule does not result in appreciable deterrence, then, clearly, its use * * * is unwarranted.' *United States v. Janis,* 428 U.S. 433, 454 [96 S.Ct. 3021, 3032, 49 L.Ed.2d 1046, 1060] (1976)."

In applying the exclusionary rule in different contexts, the Supreme Court has adopted a balancing test to weigh the likelihood of deterrence against the costs of withholding reliable information from the truth-seeking process. *Illinois v. Krull* (1987), 480 U.S. 340, 347–348, 107 S.Ct. 1160, 1166, 94 L.Ed.2d 364, 373–374; see, also, *State v. Wilmoth* (1986), 22 Ohio St.3d 251, 259–260, 22 OBR 427, 434–435, 490 N.E.2d 1236, 1242–1243. On the benefit side of the balance, "the 'prime

purpose' of the [exclusionary] rule, if not the sole one, 'is to deter future unlawful police conduct.'" *United States v. Janis* .(1976), 428 U.S. 433, 446, 96 S.Ct. 3021, 3028, 49 L.Ed.2d 1046, 1056, quoting *United States v. Calandra* (1974), 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561, 571. The costs of application include the loss of probative evidence and the secondary costs that arise from the "less accurate or more cumbersome adjudication that therefore occurs." *INS v. Lopez–Mendoza* (1984), 468 U.S. 1032, 1041, 104 S.Ct. 3479, 3485, 82 L.Ed.2d 778, 787.

Appellee contends that *Calandra* held that evidence seized by a probation officer in an illegal search of a probationer's home is inadmissible in a subsequent probation revocation hearing. Appellee argues the Supreme Court of the United States has never overruled *Calandra.* However, appellee's view of *Calandra* is mistaken. The actual holding of that case is that the exclusionary rule is not applicable to grand jury proceedings. 414 U.S. at 350, 94 S.Ct. at 621, 38 L.Ed.2d at 573. Moreover, the Supreme Court of the United States has never addressed the issue of whether the exclusionary rule applies to revocation proceedings. However, "its recent decisions have indicated a reluctance to extend the exclusionary rule beyond the trial setting." Cohen & Gobert, The Law of Probation and Parole (1983) 88, Section 2.32; *INS, supra,* 468 U.S. at 1051, 104 S.Ct. at 3489, 82 L.Ed.2d at 793 (exclusionary rule inapplicable to civil deportation proceeding); *Janis, supra,* 428 U.S. at 459–460, 96 S.Ct. at 3034–3035, 49 L.Ed.2d at 1064 (exclusionary rule inapplicable in federal civil tax assessment proceeding following unlawful seizure of evidence by state officials); *Calandra, supra,* 414 U.S. at 350, 94 S.Ct. at 621, 38 L.Ed.2d at 573 (exclusionary rule inapplicable to grand jury proceedings).

The vast majority of federal and state courts addressing the issue have held that applying the balancing test generally results in the exclusionary rule's being inapplicable to revocation proceedings. See, *e.g., United States v. Bazzano* (C.A.3, 1983), 712 F.2d 826, certiorari denied *sub nom. Mollica v. United States* (1984), 465 U.S. 1078, 104 S.Ct. 1439, 79 L.Ed.2d 760; *United States v. Brown* (C.A.5, 1973), 488 F.2d 94; *United States v. Farmer* (C.A.6, 1975), 512 F.2d 160, certiorari denied (1975), 423 U.S. 987, 96 S.Ct. 397, 46 L.Ed.2d 305; *United States v. Hill* (C.A.7, 1971), 447 F.2d 817; *United States v. Frederickson* (C.A.8, 1978), 581 F.2d 711; *United States v. Winsett* (C.A.9, 1975), 518 F.2d 51; *United States v. Finney* (C.A.10, 1990), 897 F.2d 1047; see, generally, Annotation, Admissibility, in Federal Probation Revocation Proceeding, of Evidence Obtained Through Unreasonable Search and Seizure or in Absence of Miranda Warnings (1976), 30 A.L.R. Fed. 824. For state cases, see *State v. Turner* (1995), 257 Kan. 19, 22, 891 P.2d 317, 320, and *Commonwealth v. Olsen* (1989), 405 Mass. 491, 492–493, 541 N.E.2d 1003, 1004, and cases cited therein; see, also, Annotation, Admissibility, in State Probation Revocation Proceedings, of Evidence Obtained

Through Illegal Search and Seizure, *supra,* 77 A.L.R.3d at 641–643, Section 3. A few federal and state courts have adopted the minority view that the exclusionary rule applies to revocation proceedings. See, *e.g., United States v. Workman* (C.A.4, 1978), 585 F.2d 1205, 1211; *Adams v. State* (1980), 153 Ga.App. 41, 42, 264 S.E.2d 532, 533.

In *Burkholder,* this court aligned itself with the minority view. While purporting to recognize that the primary purpose of the exclusionary rule is to deter future unlawful police conduct, the court concluded that applying the exclusionary rule to revocation proceedings "furthers the universally accepted purpose to deter police misconduct by removing the incentive to disregard it." 12 Ohio St.3d at 207, 12 OBR at 271, 466 N.E.2d at 178. The court further noted that the police "know of the high probability that any suspect in a new crime may also be a probationer or parolee" and that the "potential for abuse must be deterred in order to maintain the constitutional guarantees that underlie the exclusionary rule." *Id.*

*Burkholder* has been criticized as having "mechanically applied" the exclusionary rule to revocation proceedings. See Note, the Application of the Exclusionary Rule to Probation Revocation Proceedings (1987), 17 Mem.St.U.L.Rev. 555, 576–577. Arguably, the court in *Burkholder* failed to analyze the exclusionary rule's deterrent purpose under the specific facts of the case. The blanket application of the rule could result in allowing a defendant's abuse of probation or parole to go unpunished while simultaneously failing to further the rule's deterrence rationale. *Id.* Justice Holmes accurately noted in his dissenting opinion in *Burkholder* that, "[a]s a result of the search of appellee's home, one hundred and eighty-three pieces of stolen property were recovered. This property came from at least seven different burglaries. Appellee was subsequently indicted on seven counts of receiving stolen property. However, the trial court dismissed the case on the basis of an improper search warrant. I fail to see where any additional deterrent effect will be gained by invoking the exclusionary rule to a proceeding after a dismissal of all criminal charges." 12 Ohio St.3d at 209, 12 OBR at 273, 466 N.E.2d at 180 (Holmes, J., dissenting).

Moreover, in a leading case setting forth the majority view, a federal appellate court stated that, "[w]hatever deterrence of police misconduct results from the exclusion of illegally seized evidence from criminal trials, it is unrealistic to assume that application of the [exclusionary] rule to probation [or parole] revocation proceedings would significantly further that goal." *Winsett, supra,* 518 F.2d at 54. The court further held that even assuming, *arguendo,* that "double application of the exclusionary rule * * * would achieve some minimal deterrent effect, we find the potential benefits significantly outweighed by potential damage to the probation system." *Id.* The *Winsett* court reasoned

that probation, like parole, promotes rehabilitation of convicted criminals by allowing reintegration into society while at the same time imposing conditions which provide society with a measure of protection. *Id.* at 54–55. "Because violation of probation [or parole] conditions may indicate that the probationer [or parolee] is not ready or is incapable of rehabilitation by integration into society, it is extremely important that *all reliable* evidence shedding light on the probationer's [or parolee's] conduct be available during probation [or parole] revocation proceedings." (Emphasis *sic.*) *Id.* at 55.

The application of the exclusionary rule to revocation proceedings would force probation and parole officers to spend more time and energy amassing technically correct admissible evidence for those probationers and parolees who cannot or will not accept rehabilitation. That time and energy would be better served by encouraging those with a "sincere desire to avoid the all-too-familiar cycle of recidivism." *Id.*, citing *United States ex rel. Sperling v. Fitzpatrick* (C.A.2, 1970), 426 F.2d 1161, 1165; *United States v. Montez* (C.A.5, 1992), 952 F.2d 854, 859. An agency whose "duty is to decide when a convicted offender can safely be allowed to return to and remain in society is in a different posture than the court which decides his original guilt. To blind the authority to relevant facts in this special context is to incur a risk of danger to the public which * * * outweighs the competing considerations of a problematical gain in deterrence." *In re Martinez* (1970), 1 Cal.3d 641, 650, 83 Cal.Rptr. 382, 388, 463 P.2d 734, 740; see, also, *Gronski v. State* (Wyo.1985), 700 P.2d 777, 779; *State v. Sears* (Alaska 1976), 553 P.2d 907, 913, fn. 13.

Based upon our agreement with the foregoing authorities, this court now chooses to align itself with the clear majority of federal and state jurisdictions. We now overrule *Burkholder*, which mechanically applied the exclusionary rule and ignored the balancing test adopted by the Supreme Court of the United States. We hold that evidence obtained through an unreasonable or unlawful search and seizure is generally admissible in probation and/or parole revocation proceedings. "Despite its broad deterrent purpose, the exclusionary rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons." *Calandra, supra,* 414 U.S. at 348, 94 S.Ct. at 620, 38 L.Ed.2d at 571. We disapprove of *Burkholder's* reliance on the Ohio Constitution to support application of the exclusionary rule in this regard. Any consideration of the balances involved weighs heavily in favor of admissibility, regardless of the source of the argument in favor of exclusion.

We note that *Burkholder* also appears to have emphasized the imperative of judicial integrity as a rationale for its holding. The opinion quotes from the dissent of Justice Brandeis in *Olmstead v. United States* (1928), 277 U.S. 438, 485, 48 S.Ct. 564, 575, 72 L.Ed. 944, 960: " 'If the Government becomes a lawbreaker,

it breeds contempt for law;  it invites every man to become a law unto himself;  it invites anarchy.' "  12 Ohio St.3d at 208, 12 OBR at 271, 466 N.E.2d at 179. However, the Supreme Court of the United States has repeatedly emphasized that deterrence is the primary, if not sole, purpose of the exclusionary rule. *Evans, supra,* 514 U.S. at ——, 115 S.Ct. at 1191, 131 L.Ed.2d at 44; *Krull, supra,* 480 U.S. at 347, 107 S.Ct. at 1165, 94 L.Ed.2d at 373; *Janis, supra,* 428 U.S. at 446, 96 S.Ct. at 3028, 49 L.Ed.2d at 1056; *Calandra, supra,* 414 U.S. at 347, 94 S.Ct. at 619, 38 L.Ed.2d at 571.  See, also, *State v. Ford* (1989), 64 Ohio App.3d 105, 111, 580 N.E.2d 827, 831 ("[I]t has become clear that the only reason for the [exclusionary] rule is that it is necessary to deter government against continued and future violations of Fourth Amendment rights of its citizens."); *Payne v. Robinson* (1988), 207 Conn. 565, 573, 541 A.2d 504, 507 ("no need to consider judicial integrity as an independently significant factor").  Therefore, we find to be erroneous *Burkholder's* reliance on the imperative of judicial integrity as a rationale to support its extension of the exclusionary rule to revocation proceedings.  Any deterrence benefit was satisfied by suppression of the evidence in appellee's criminal proceeding.  Any additional marginal deterrence, as well as any accompanying minimal advancement of judicial integrity, is clearly outweighed by the costs of extending the exclusionary rule to his parole revocation hearing.

This court has observed that a parolee in a revocation proceeding does not have available all procedural rights possessed by a criminal trial defendant.  *State ex rel. Coulverson v. Ohio Adult Parole Auth.* (1991), 62 Ohio St.3d 12, 16, 577 N.E.2d 352, 355.  See *Morrissey v. Brewer* (1972), 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494 ("[R]evocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations.  * * * Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions.").  For example, "[t]he Parole Board may admit hearsay." *Coulverson,* 62 Ohio St.3d at 16, 577 N.E.2d at 355.  See *Morrissey,* 408 U.S. at 489, 92 S.Ct. at 2604, 33 L.Ed.2d at 499 (A parole revocation hearing is not a criminal prosecution; "the process should be flexible enough to consider evidence * * * that would not be admissible in an adversary criminal trial.").  Thus, it is not only consistent for this court to apply a balancing test to determine which rights should apply in revocation proceedings, it is virtually a requirement.  When the admissibility of relevant evidence in parole revocation proceedings is weighed against application of the exclusionary rule, the balance clearly falls on the side of admissibility.

"[T]here is great value to society in the reintegration of its nonconforming members through supervised release."  *Montez, supra,* 952 F.2d at 859.  Howev-

er, this reintegration can be achieved only if all reliable information is available to assess the propriety of continued release. *Id.* "[E]xcluding from [revocation] proceedings reliable evidence bearing on the [individual's] rehabilitation would contribute little to deterring constitutional violations while impeding society's interest in protecting itself against convicted criminals who have abused the liberty afforded them." *Bazzano, supra,* 712 F.2d at 831.

In conclusion, we overrule this court's opinion in *Burkholder,* which failed to realize the unacceptable costs to society that accompany a decision to apply the exclusionary rule in revocation proceedings. The judgment of the court of appeals is reversed.[1]

*Judgment reversed.*

MOYER, C.J., DOUGLAS and F.E. SWEENEY, JJ., concur.

WRIGHT and PFEIFER, JJ., dissent.

COOK, J., dissents.

WRIGHT, J., dissenting. I must respectfully dissent and do so more in sorrow than in anger. Today the majority has jettisoned the decision in *Burkholder,* an almost identical case in which this court held in the syllabus:

"Pursuant to Section 14, Article I of the Ohio Constitution, evidence obtained through an unreasonable or unlawful search and seizure is inadmissible in a probation revocation proceeding." *State v. Burkholder* (1984), 12 Ohio St.3d 205, 12 OBR 269, 466 N.E.2d 176.

My former colleague, Justice Asher Sweeney, elaborated on this holding, stating without equivocation:

"The constitutional guarantee * * * applies equally to all persons and is not limited in any manner whatsoever. While the procedural due process require- ments in a probation revocation proceeding are not as extensive as those found in a criminal trial, the substantive constitutional right against unreasonable searches and seizures embodied in the Fourth Amendment to the United States Constitu- tion and Section 14, Article I of the Ohio Constitution, must also apply to a

---

1. Appellee contends that the evidence should have been suppressed at his parole revocation hearing because his parole officer effectively acted as an agent of the police. However, the uncontroverted evidence below was that Fisher searched the residence pursuant to one of the parole conditions appellee agreed to, *i.e.,* a warrantless search of his residence by his parole officer at any time. Such conditions are generally upheld as constitutional. See, generally, Annotation, Validity of Requirement that, as Condition of Probation, Defendant Submit to Warrantless Searches (1977), 79 A.L.R.3d 1083, 1087, Section 2[a]. A state parolee may be searched, pursuant to a consent provision in his parole terms, if his parole officer reasonably believes a search is appropriate.

probation revocation proceeding." *Burkholder*, 12 Ohio St.3d at 206, 12 OBR at 270, 466 N.E.2d at 178.

The court went on to note:

"Our holding in the case *sub judice* is consistent with our decision in *State v. Gallagher* (1976), 46 Ohio St.2d 225 [75 O.O.2d 280, 348 N.E.2d 336], in that *a probationer like the parolee in Gallagher must be afforded the right to assert his or her constitutional privileges.* * * *" (Emphasis added.) *Burkholder*, 12 Ohio St.3d at 207, 12 OBR at 271, 466 N.E.2d at 178–179.

In this case, the trial court found that appellant's parole officer, Beverly Fisher, was acting as a "stalking horse" for the Findlay police and that her actions were improperly intrusive and in violation of appellant's constitutional rights. Accordingly, the trial judge ruled that all evidence obtained by the illegal search and seizure was inadmissible in the criminal proceeding against appellant. The same restriction should apply with respect to the parole revocation proceeding in this case. For some unexplained reason, the majority chose to ignore the trial court's salient findings. Furthermore, neither the majority nor counsel for the state of Ohio cites a single convincing public-policy reason for today's constitutional retreat from *Burkholder*.

I bow to no man with respect to the high regard in which I hold law enforcement officers generally, and in particular those officers charged with the supervision of probationers and parolees. These officers hold thankless but important positions in our society. Even so, there are some who act with excessive zeal. We have before us such a case, and that is precisely why this court and the United States Supreme Court have adopted the "exclusionary rule."

Justice Brandeis noted in his dissenting opinion in *Olmstead v. United States* (1928), 277 U.S. 438, 485, 48 S.Ct. 564, 575, 72 L.Ed. 944, 960:

" * * * In a government of laws, existence of the government will be imperiled if it fails to observe the law scrupulously. Our Government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the Government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy."

I recognize that many members of our citizenry resent the fact that our courts appear overly concerned with protecting the rights of criminals. However, I respectfully suggest that these good people's memory concerning our unique constitutional heritage has become clouded. I would remind my brethren that in colonial times the King's men indulged themselves in warrantless, no-knock searches of our ancestors' homes with a sense of arrogance and absolute impunity. Therein lies the genesis of the Fourth Amendment to the United

States Constitution and Section 14, Article I of the Ohio Constitution. In my view, judges must vigorously defend and support the rights embodied therein. The judges of the Tenth District Court of Appeals so acted and I would affirm their well-reasoned decision.

PFEIFER, J., concurs in the foregoing dissenting opinion.

COOK, J., dissenting. Although I concede the benefit to deciding the singular issue briefed by the parties and appealed here, we simply are without jurisdiction to consider nonfinal orders. Because the court of appeals did not rule on the claim that the parole revocation hearing was untimely, appellee Wright may now resurrect that claim. Assuming the court of appeals denies relief, he will have a second appeal to this court. Avoidance of such situations is the purpose for limiting our jurisdiction to appeals of final orders.