OPINION
{¶ 1} Plaintiffs-appellants, Ohio Congress of Parents and Teachers et al., appeal from the May 7, 2003 judgment of the Franklin County Court of Common Pleas entering judgment in favor of defendants-appellees, State of Ohio Board of Education et al., as to claims four, five, six, and seven of appellants' third amended complaint.
 {¶ 2} This case challenges the constitutionality and operation of Ohio's community school program enacted in 1997. Community schools are independently governed public schools that are funded from state revenues pursuant to R.C. Chapter 3314. The appellants include the Ohio Federation of Teachers, the Ohio Congress of Parents and Teachers, the Ohio School Boards Association, the League of Women Voters of Ohio, certain education associations and teachers' unions, certain parents of children in public schools, various taxpayers, school district boards of education, and residents of various school districts.
 {¶ 3} The appellees include the State of Ohio Board of Education, the Ohio Department of Education, the Superintendent of Public Instruction, various community schools including the Educational Classroom of Tomorrow ("ECOT"), parents of children attending community schools, and White Hat Management LLC, a Nevada limited liability corporation that controls various community schools.
 {¶ 4} Appellants commenced their action in 2001 and filed their third amended complaint, subject of this appeal, on April 24, 2002. The third amended complaint contains ten claims. Claims one through three allege violation of statutes governing the operation of community schools and seek a writ of mandamus to compel proper monitoring of community schools.
 {¶ 5} Claims four through seven challenge the constitutionality of the community school program and seek: (1) a declaratory judgment that the community school statutes violate the Ohio Constitution; (2) an injunction preventing further appropriations to community schools found to be in violation of the Ohio Constitution; and (3) a writ of mandamus compelling appellees to restore state funds diverted from school districts as a result of allegedly unconstitutional or unlawful payments to community schools.
 {¶ 6} Claims eight through ten seek writs of mandamus and declaratory judgments concerning various aspects of the operation of community schools, including a writ of mandamus to compel the state to seek recovery to the state treasury of funds appropriated to community schools while in violation of contracts or state law and to pay such funds to Ohio school districts that lost funding.
 {¶ 7} At a status conference on November 9, 2001, the trial court indicated that it intended to address legal issues first, including challenges to the facial constitutionality of the community school program. The parties accordingly filed various dispositive motions. Appellants filed motions for partial summary judgment on claims four, five, seven, eight, nine, and ten. The state appellees filed a motion to dismiss the third amended complaint and/or for summary judgment. The community school defendants filed a motion for judgment on the pleadings as to some of the claims. White Hat filed a motion for judgment on the pleadings. Additional community school defendants filed a motion to join the community school defendants' motion for judgment on the pleadings as to some of the claims, and the community school defendants filed a motion for judgment on the pleadings or, alternatively, for dismissal under Civ.R. 21.
 {¶ 8} In a decision dated April 21, 2003, and a judgment entry dated May 7, 2003, the trial court dismissed claims four, five, six, and seven of appellants' third amended complaint with a certification of no just reason for delay pursuant to Civ.R. 54(B). In doing so, the trial court did not look beyond the pleadings. Appellants timely filed their notice of appeal.
 {¶ 9} However, before addressing the assignments of error, we must first determine whether the order appealed from is a final appealable order. If not, we must dismiss the appeal for lack of subject matter jurisdiction.
 {¶ 10} In Wisintainer v. Elcen Power Strut Co. (1993),67 Ohio St.3d 352, the Supreme Court of Ohio set forth a two-step process by which an appellate court is to determine whether an appeal certified under Civ.R. 54(B) is a final appealable order. The court stated, at 354:
An appellate court's review of the trial court's grant of certification should be a two-step process. First, the focus of the appellate court's review should be on whether the order appealed is "final" as defined by R.C. 2505.02. The reviewing court should concentrate on answering that predominantly legal question of whether the order sought to be appealed affects a substantial right and whether it in effect determines an action and prevents a judgment. It is in this first step of the review process that the court of appeals plays its most important role.
The court went on to explain:
Second, the appellate court should review the trial court's determination, required by Civ. R. 54(B), that "there is no just reason for delay." As this court has held in the past, the phrase "no just reason for delay" is not a mystical incantation that transforms a non-final order into a final appealable order. * * * Such language can, however, through Civ.R. 54(B), transform a final order into a final appealable order.
 {¶ 11} R.C. 2505.03(A) provides in pertinent part that: "Every final order, judgment or decree of a court * * * may be reviewed on appeal by a court of common pleas, a court of appeals, or the Supreme Court, whichever has jurisdiction." R.C.2505.02(B) defines a final order in pertinent part as follows:
(B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:
(1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment[.]
 {¶ 12} R.C. 2505.02(A)(1), in pertinent part, defines a "substantial right" as one, "that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." A final order is one disposing of the whole case or some separate and distinct branch of it. Noble v. Colwell (1989), 44 Ohio St.3d 92, 94. If claims are factually separate and independent, multiple claims are clearly present. Two legal theories that require proof of substantially different facts are considered separate claims for purposes of Civ.R. 54(B); State ex rel. Wright v. Ohio AdultParole Auth. (1996), 75 Ohio St.3d 82, 86.
 {¶ 13} Here, appellants are seeking to enforce substantial rights by bringing their constitutional claims. It also appears that factually and legally the constitutional claims form a separate and distinct branch from the statutory claims. In order to prove violations of the statutes concerning the organization and operation of community schools, appellants must prove different facts under different legal theories from what they must prove with respect to the constitutional claims. As dismissal of the constitutional claims precludes appellants from litigating any aspect of those claims, the judgment dismissing those claims is a final order.
 {¶ 14} We must next review the trial court's determination that the interests of sound judicial administration could be served by a finding of no just reason for delay. According to the Supreme Court of Ohio, the paramount consideration in reviewing a finding of "no just reason for delay" is whether the court's determination serves judicial economy at the trial level.Wisintainer, at 355.
 {¶ 15} "For purposes of Civ.R. 54(B) certification, in deciding that there is no just reason for delay, the trial judge makes what is essentially a factual determination — whether an interlocutory appeal is consistent with the interests of sound judicial administration." Wisintainer, at paragraph one of the syllabus. "Where the record indicates that the interest of sound judicial administration could be served by a finding of `no just reason for delay,' the trial court's certification determination must stand" Id., at paragraph two of the syllabus.
 {¶ 16} In this case, the trial court conducted a status conference in which the parties agreed that addressing the constitutional issues first through the filing of dispositive motions had the potential to avoid costly discovery or a lengthy trial. In the interests of judicial economy, the pursuit of an immediate appeal on the constitutional rulings, while deferring discovery on the remaining statutory claims, potentially could conserve judicial resources.
 {¶ 17} Finally, it does not appear that money damages are sought in the complaint. Rather, restitution to the state treasury is sought for funds that were expended from the Ohio treasury during the time period such schools were allegedly operated or sponsored in violation of Ohio law. Thus, the trial court has not severed the issue of damages from that of liability as was done in Newcomer v. Nationwide Ins. Enterprise, Franklin App. No. 02AP-873, 2003-Ohio-960.
 {¶ 18} Accordingly, we conclude that the trial court's May 7, 2003 judgment on claims four through seven constitutes a final appealable order. We turn now to the assignments of error.
 {¶ 19} Appellants have assigned the following as error:
First Assignment of Error
The trial court erred in dismissing plaintiffs' claims in counts five and six of the third amended complaint on grounds ofres judicata.
Second Assignment of Error
The trial court erred in dismissing count four of plaintiffs' third amended complaint and in failing to grant plaintiffs' motion for summary judgment on that count.
Third Assignment of Error
The trial court erred in denying plaintiffs' motion for summary judgment as to count five.
Fourth assignment of error
The trial court erred in dismissing count seven of plaintiffs' third amended complaint and in failing to grant summary judgment declaring a violation of Article VIII, section 5.
 {¶ 20} As mentioned previously, the trial court did not look beyond the pleadings in determining that claims four through seven should be dismissed. A Civ.R. 12(C) motion for judgment on the pleadings presents only questions of law. Fontbank, Inc. v.CompuServe, Inc. (2000), 138 Ohio App.3d 801, 807, appeal not allowed, 90 Ohio St.3d 1493. In reviewing the trial court's decision to grant such a motion, this court conducts a de novo review of the legal issues without deference to the trial court's determination. Id. Dismissal of a complaint is appropriate under Civ.R. 12(C) where, construing all material allegations in the complaint along with all reasonable inferences drawn therefrom in favor of the plaintiff as the nonmoving party, the court finds the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Id., citing State ex rel.Midwest Pride IV, Inc. v. Pontious (1996), 75 Ohio St.3d 565,570.
 {¶ 21} In their first assignment of error, appellants contend that the trial court erred in dismissing, as barred by res judicata, claims five and six of the third amended complaint, claims arising under Section 2, Article VI, Ohio Constitution. That section provides as follows:
The General Assembly shall make such provisions, by taxation, or otherwise, as, with the income arising from the school trust fund, will secure a thorough and efficient system of common schools throughout the state; but no religious or other sect, or sects, shall ever have any exclusive right to, or control of, any part of the school funds of this state.
 {¶ 22} In their fifth cause of action, appellants allege that community schools are not part of the constitutional system of common schools because they are not owned by the public and governed by officials elected by the public. We disagree, concluding as a matter of law that, with respect to the claim that community schools are not part of the system of common schools, appellants have failed to state a claim upon which relief may be granted.
 {¶ 23} "Common schools" are those schools or that system of schools established by laws enacted by the legislature in pursuance of the constitutional mandate to establish a thorough and efficient system of common schools throughout the state administered by public agencies created by law and maintained from public funds raised by taxation or from school funds otherwise obtained. 1933 Ohio Atty.Gen.Ops. No. 1409. As the Supreme Court of Ohio has phrased it, "there is but one system of public education in Ohio: It is a statewide system, expressly created by the state's highest governing document, the Constitution." DeRolph v. State (1997), 78 Ohio St.3d 193, 213
("DeRolph I").
 {¶ 24} According to R.C. 3314.01(B), community schools created under Chapter 3314 of the Ohio Revised Code, are public schools, independent of any school district, and are part of the state's program of education. Community schools are publicly funded, non-profit corporations. R.C. 3314.08 and 3314.03(A)(1). Thus, from a legislative standpoint, the General Assembly specifically created community schools to be part of the system of common schools throughout the state, maintained by public funds, and created as part of the state system of public education. To the extent appellants are alleging that current community schools are not operating as genuine non-profit corporations, their allegations are properly addressed in their second cause of action.
 {¶ 25} In their fifth cause of action, appellants also allege that community schools have been allowed to operate with different and diminished standards and have been exempted from various academic standards, thereby violating the "thorough and efficient" clause of the Ohio Constitution. In their sixth cause of action, appellants allege that the funding method used to support community schools diverts funds from city school districts thereby depriving those school districts of the ability to provide a thorough and efficient system of common schools.
 {¶ 26} The trial court dismissed those claims on the basis of res judicata. The trial court concluded that the DeRolph
litigation, and in particular the decision of the Ohio Supreme Court in DeRolph v. State (2002), 97 Ohio St.3d 434 ("DeRolphIV"), precluded relitigation of the question of whether Ohio's system of public education is in violation of the "thorough and efficient" clause of the Ohio Constitution.
 {¶ 27} In declaring Ohio's system of public schools in violation of Section 2, Article VI, Ohio Constitution, the Ohio Supreme Court, in DeRolph I, stated that: "A thorough and efficient system of common schools includes facilities in good repair and the supplies, materials, and funds necessary to maintain these facilities in a safe manner, in compliance with all local, state, and federal mandates." DeRolph I, at 213. Subsequently, in DeRolph v. State (2000), 89 Ohio St.3d 1
("DeRolph II"), the court stated that: "Strict, statewide academic guidelines must be developed and rigorously followed throughout all of Ohio's public school districts." DeRolph II,
at 37. Finally, in DeRolph IV, the court directed the General Assembly to enact a school funding scheme that is thorough and efficient as explained in DeRolph I and DeRolph II. DeRolphIV, at 435.
 {¶ 28} Due process generally precludes giving conclusive effect to a prior judgment against one who is neither a party nor in privity with a party therein. See Richards v. JeffersonCounty, Ala. (1996), 517 U.S. 793, 116 S.Ct. 1761. It is a fundamental principle of American jurisprudence that a person cannot be bound by a judgment in litigation to which he was not a party. Martin v. Wilks (1989), 490 U.S. 755, 109 S.Ct. 2180,2184; Hansberry v. Lee (1940), 311 U.S. 32, 40, 61 S.Ct. 115. The prohibition against using the result of prior judicial proceedings to determine the rights of strangers to those proceedings is required by the due process guarantees of theFifth and Fourteenth Amendments. The deep-rooted historic tradition is that everyone should have his own day in court.Richards, at 798.
 {¶ 29} Nonetheless, we acknowledge the United States Supreme Court has "recognized the `familiar doctrine * * * that members of a class not present as parties to the litigation may be bound by the judgment where they are in fact adequately represented by parties who are present, or * * * the relationship between the parties present and those who are absent is such as legally to entitle the former to stand in judgment for the latter.'"Richards, at 800-801, quoting Hansberry, at 42-43. In addition, in public actions in which taxpayers are using their status to complain about misuse of public funds or other public action that has an indirect impact on their interests, the states have wide latitude to establish procedures to limit the number of judicial proceedings that may be entertained. Richards, at 803.
 {¶ 30} In City of Cincinnati ex rel. Crotty v. City ofCincinnati (1977), 50 Ohio St.2d 27, the Supreme Court of Ohio addressed the issue of mutuality of parties pertaining to res judicata in the context of the ability of citizens to litigate an issue that had already been addressed in an action by a governmental entity. In Crotty, taxpayers filed suit to challenge a prior ruling by the Supreme Court of Ohio upholding an order by the Director of Environmental Protection that fluoride be added to Cincinnati's water system. In holding that the most recent action was barred, the court, in Crotty,
stated, at 28-29:
* * * [A] judgment for or against a governmental body * * * is binding and conclusive as res judicata on all residents, citizens and taxpayers with respect to matters adjudicated which are of general and public interest * * *. Where, as here, the case involves a single cause of action, the prior judgment is conclusive not only as to what was determined in the prior action, but also as to all material facts or questions which properly might have been litigated in the case.
 {¶ 31} On the other hand, in Stromberg v. Bd. of Edn.
(1980), 64 Ohio St.2d 98, the Supreme Court of Ohio, elaborating on the Crotty case, found that a taxpayer might have a private right to relitigate a public issue "where causes of action are not the same or where the taxpayer has a different private right not shared in common with the public[.]" Stromberg, at 101.
 {¶ 32} Here, despite appellees' contentions to the contrary, the Supreme Court's judgment in the DeRolph litigation did not address the issues appellants raise and thus does not bar appellants' attempts to litigate the constitutionality of the provisions establishing community schools. Appellants claim that community schools drain funds from local school districts and accordingly threaten the thoroughness and efficiency of the entire public school system. The DeRolph litigation, by contrast, addressed whether the Ohio public schools' heavy dependence on property taxes for their support violated the constitutional provision requiring a thorough and efficient system of schools.
 {¶ 33} Moreover, in the DeRolph litigation, the Supreme Court, though finding the property tax funding mechanism for the public schools violated the Ohio Constitution, could not eliminate the entire public school system, but was forced to rely on the Ohio legislature to correct the deficiencies in the manner public schools are funded. Here, unlike DeRolph, if the trial court were to determine the community schools are unconstitutional, the court could fashion a remedy, including the possibility of eliminating the community schools from the public school system.
 {¶ 34} Indeed, to accept appellees' interpretation of the res judicata effects of DeRolph suggests that community schools, along with the entire public school system, have been declared unconstitutional, that the statutes establishing them likewise are unconstitutional and unenforceable, and that summary judgment should have entered for appellants. Appellees' contentions further suggest that any constitutional action concerning the public school system in Ohio is barred, regardless of the basis for challenging it, since it already has been declared unconstitutional in DeRolph. Neither suggestion is tenable, and they underscore the inapplicability of res judicata to bar appellants' claims in this action. Accordingly, the trial court erred in concluding appellants' sixth claim is barred by res judicata.
 {¶ 35} Appellants' fifth claim contends the community schools violate the constitutional requirement for a thorough and efficient school system because they employ diminished standards. The trial court did not address appellants' contention because it concluded the issue was barred by res judicata. Because we have concluded res judicata does not bar those contentions, the trial court erred in not reaching the merits of appellants' fifth claim. Appellant's first assignment of error is sustained.
 {¶ 36} In their second assignment of error, appellants contend that the trial court erred in dismissing claim four of their third amended complaint. In that claim, appellants contend the community schools violate Section 3, Article VI, Ohio Constitution, in that community schools are not subject to local voter control. Appellants further argue that Chapter 3314 of the Ohio Revised Code unconstitutionally creates a shadow system of privately owned and managed schools that circumvents local control through locally elected school boards.
 {¶ 37} Section 3, Article VI, Ohio Constitution, provides as follows:
Provision shall be made by law for the organization, administration and control of the public school system of the state supported by public funds: provided, that each school district embraced wholly or in part within any city shall have the power by referendum vote to determine for itself the number of members and the organization of the district board of education, and provision shall be made by law for the exercise of this power by such school districts.
 {¶ 38} Appellants claim that by making community schools independent of locally elected school boards, the legislature has violated the intent manifest in Section 3, Article VI, Ohio Constitution, to provide local voter control over public schools.
 {¶ 39} The plain language of Section 3, Article VI, gives voters in a city school district the power to determine the number of members and the organization of its school board. It does not give those voters more power than the General Assembly to create policy and to organize and administer a system of public education throughout the state. In State ex rel. Core v.Green (1953), 160 Ohio St. 175, 180, the Ohio Supreme Court stated that the General Assembly is given exceedingly broad powers to provide a thorough and efficient system of common schools by taxation, and for the organization, administration, and control thereof. Thus, the General Assembly's exercise of its power to create, change, and modify school districts does not impinge upon constitutional rights. Here, the General Assembly has chosen to create community schools as part of the state's program of education but independent of school districts. R.C.3314.01(B). Nothing in Section 3, Article VI, precludes the General Assembly from doing so.
 {¶ 40} In their fourth cause of action, appellants also argue that community schools violate Section 5, Article XII, Ohio Constitution, which provides:
No tax shall be levied, except in pursuance of law; and every law imposing a tax shall state, distinctly, the object of the same, to which only, it shall be applied.
Appellants contend that the method of funding community schools approved by the General Assembly has the effect of diverting state funds that would otherwise go to local school districts, and effectively takes from "legitimate public school districts" locally voted and levied property taxes.
 {¶ 41} Although appellants disagree with the funding method put into place by the General Assembly to fund community schools, appellants admit in their complaint that the funding for community schools comes from the state. "For each student attending a community school sponsored by the State Board, the amount appropriated by the state to the student's local school district is reduced on average by about $5,000 per child." (Third Amended Complaint, at ¶ 37.) R.C. 3314.08 clearly confirms that funding for community schools comes from state funds pursuant to a complex funding formula. Nonetheless, appellants contend that, as a practical matter, locally raised taxes fund community schools because "the state deducts from the student's school district state appropriation the full per pupil foundation amount (including both the state share and local share)," thus forcing the school district to make up the difference with real estate taxes. (Appellants' brief, at 31.) As such, their claim raises issues of fact, and to that extent appellants' second assignment of error is sustained.
 {¶ 42} In their third assignment of error, appellants argue that the trial court erred in dismissing claim five of the third amended complaint. Appellants reiterate the arguments presented in their first assignment of error. Specifically, they contend community schools are not part of the system of common schools, and we have rejected that argument. Further, they assert the legislature has unconstitutionally exempted community schools from statewide standards, thus violating the "thorough and efficient" clause of Section 2, Article VI, Ohio Constitution. Because the trial court addressed that contention on the basis of res judicata, we sustain that portion of appellants' third assignment of error. Accordingly appellants' third assignment of error is sustained in part and overruled in part.
 {¶ 43} In their fourth assignment of error, appellants contend that the trial court erred in dismissing claim seven of the third amended complaint. In claim seven, appellants allege that the financial relationship between the state and community schools violates Section 4, Article VIII, Ohio Constitution, which provides:
The credit of the state shall not, in any manner, be given or loaned to, or in aid of, any individual association or corporation whatever; nor shall the state ever hereafter become a joint owner, or stockholder, in any company or association in this state, or elsewhere, formed for any purpose whatever.
Appellants claim that R.C. 3314.08(J) unconstitutionally permits community schools to borrow money, that the provision permitting the Ohio Schools Facilities Commission to guarantee loans made to community schools violates the constitution, and that community schools are not bona fide not-for-profit corporations, but, instead, are dominated by private interests and, therefore, improperly tap into public funds.
 {¶ 44} Appellants do not dispute that Section 4, Article VIII, does not apply to state funding of a non-profit corporation operating for a public purpose, but, instead, contend that many community schools are not legitimate non-profit entities, allowing private entities to derive an unconscionable windfall, excessive income, or excessive profits by contracting with community schools to provide goods and services. As the trial court stated, their claims are properly addressed in the remaining claims of appellants' third amended complaint. Because, however, our decision requires that this matter be returned to the trial court, where the trial court will have the opportunity to re-examine the issues raised in the first three assignments of error, the trial court may at the same time examine the issues in appellants' fourth assignment of error, even if only as part of the remaining claims in appellants' complaint. To that extent, appellants' fourth assignment of error is sustained.
 {¶ 45} Based on the foregoing, appellants' assignments of error are sustained to the extent indicated, the judgment of the Franklin County Court of Common Pleas is reversed, and this matter is remanded for further proceedings consistent with this opinion.
Judgment reversed and case remanded.
Bowman, Bryant and Watson, JJ., concur.