[Cite as *State v. Richardson*, 2021-Ohio-3362.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-200288 |
| | | C-200289 |
| Plaintiff-Appellee, | : | TRIAL NOS. B-1803045 |
| | | B-1805949 |
| vs. | : | |
| DAVID RICHARDSON, | : | |
| | | *O P I N I O N.* |
| Defendant-Appellant. | : | |


Criminal Appeals From:  Hamilton County Court of Common Pleas

Judgments Appealed From Are:  Affirmed

Date of Judgment Entry on Appeal:  September 24, 2021


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Mary Stier*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Rubenstein & Thurman, L.P.A.*, and *Scott A. Rubenstein*, for Defendant-Appellant.

**ZAYAS, Presiding Judge.**

{¶1} David Richardson appeals from the judgment of the Hamilton County Court of Common Pleas finding him guilty of community-control violations in the cases numbered B-1803045 and B-1805949, revoking his community control, and sentencing him to a prison term of 12 months in each case to be served concurrently. For the following reasons, we affirm the trial court's judgment.

Procedural and Factual Background

{¶2} In November 2018, David Richardson pled guilty to two counts of trafficking in cocaine in the cases numbered B-1803045 and B-1805949, both felonies of the fourth degree. At the sentencing hearing, Richardson admitted to regularly using cocaine and agreed to participate in a drug treatment program. The trial court placed him on two years of community control that included intensive supervision and drug treatment. The court notified Richardson that if he violated the terms of his community control, he would be incarcerated for 18 months on each case for a maximum potential aggregate sentence of 36 months.

{¶3} On July 15, 2019, Richardson was indicted for trafficking in and possession of cocaine, trafficking in and possession of heroin, and aggravated possession of drugs in the case numbered B-1903959. The drugs were found in Richardson's bedroom when his probation officer Kelly Winter conducted a search of his home. Winter also filed community-control violations in the cases numbered B-1803045 and B-1805949. Ultimately, the new drug charges against Richardson were dismissed after the trial court granted his motion to suppress the drugs, concluding that there was no reasonable suspicion to conduct the search. The state did not appeal that decision.

{¶4}    After the charges were dismissed, Richardson's counsel requested a continuance on the community-control-violation hearing to review the cases the prosecutor had given him before scheduling a hearing.  Counsel also requested that Richardson's phones be returned to him.  The court determined that the phones would be returned after the completion of the proceedings on the violations because the phones were relevant to one of the violations.

### Hearing on the Violations

{¶5}    Probation officer Kelly Winter testified that she went to Richardson's home to conduct a home visit.  At the time, Winter was considering terminating his intensive probation and recommending him for regular probation.  Winter and her partner knocked on the door, but no one answered.  After some time had passed, they left.  While driving up the street, Winter saw Richardson standing on the porch waving them down.  Winter and her partner returned and entered the home. Richardson's girlfriend and his girlfriend's mother were also present.

{¶6}    Winter searched Richardson's bedroom.  She found Richardson's wallet and identification in the bedroom.  In a dresser drawer that contained men's clothing, she found a locked box and a key.  Winter opened the box and found a significant amount of drugs.  Winter handcuffed Richardson and called the Cincinnati Police Department.  Winter testified that the Probation Department's policy is to call the police when contraband is found in a home, and have them take custody of the contraband and determine whether to file charges.

{¶7}    Winter also found two cell phones, one in a red case that she had seen Richardson use and a second one that she believed was found on his person.  Winter

asked Richardson for the passcodes to the phones, and he refused to give them to her. Richardson did not deny that the phones were his.

{¶8} After Richardson's arrest, Winter determined that criminal drug charges had been filed against him. He had been indicted for trafficking in and possession of cocaine, trafficking in and possession of heroin, and aggravated possession of drugs for amphetamine. The crime laboratory report results determined that the box contained cocaine, heroin, fentanyl, amphetamine, and marijuana.

{¶9} At that point, Winter filed community-control violations for the police contact, testing positive for marijuana on April 30, 2019, refusing to provide the passcodes to the phones so she could search them, and failing to make any payments to probation, in addition to his arrests on the new charges. Winter admitted that the positive marijuana test result alone was an insufficient reason to file a violation.

{¶10} Richardson's girlfriend, Jennifer Greenlea, testified on his behalf. Greenlea confirmed that she and her mother had been staying with Richardson, and that she was present during the search. Greenlea and her mother were asleep when Winter arrived. Winter woke her up and told her to go into the living room. Winter went into the bedroom and returned with the locked box. According to Greenlea, Winter asked Richardson if he had seen the box before, and he responded, "No." After Winter opened the box, she handcuffed Richardson and called the police. Greenlea testified that the drugs did not belong to her.

{¶11} The trial court found Richardson guilty on the probation violations. After discussing the relevant sentencing factors, the court imposed a prison term of 12 months in each case, to be served concurrently.

{¶**12**} Richardson appealed, presenting five assignments of error.

Admissibility of the Illegally-Obtained Evidence

{¶**13**} For ease of discussion, we will address the first, second, and fourth assignments of error together.

{¶**14**} Richardson first argues that the court erred in considering the drugs as a basis for a violation because the exclusionary rule prohibits the admission of illegally-seized evidence at a revocation hearing. Richardson cites to *State v. Burkholder* in support of his argument. *State v. Burkholder*, 2d Dist. Montgomery No. 8256, 1983 WL 2505 (October 18, 1983). In *Burkholder*, the Second District Court of Appeals held that evidence obtained through an unlawful search was inadmissible in a probation-revocation hearing. *Id.* at *3. On appeal, the Ohio Supreme Court affirmed, concluding that "the application of the exclusionary rule to probation revocation proceedings furthers the universally accepted purpose to deter police misconduct by removing the incentive to disregard it." *State v. Burkholder*, 12 Ohio St.3d 205, 207, 466 N.E.2d 176 (1984).

{¶**15**} However, the Ohio Supreme Court reexamined the issue and overruled *Burkholder* in *State ex rel. Wright v. Ohio Adult Parole Auth.*, 75 Ohio St.3d 82, 91, 661 N.E.2d 728 (1996). The court concluded that "when the admissibility of relevant evidence in parole revocation proceedings is weighed against application of the exclusionary rule, the balance clearly falls on the side of admissibility." *Id.* at 92. The court held that "evidence obtained through an unreasonable or unlawful search and seizure is generally admissible in probation and/or parole revocation proceedings." *Id.* at 91. *See Pennsylvania Bd. of Probation & Parole v. Scott*, 524 U.S. 357, 364, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998) (holding "that the federal

exclusionary rule does not bar the introduction at parole revocation hearings of evidence seized in violation of parolees' Fourth Amendment rights.").

{¶16} Therefore, the trial court did not err in considering the drugs at the revocation hearing, and we overrule the first assignment of error.

{¶17} Next, Richardson contends that his due-process rights were violated when his counsel failed to object to the admission of the illegally-obtained evidence.

{¶18} As previously discussed, the drugs were admissible for purposes of the revocation hearing. Consequently, counsel's failure to object did not deprive Richardson of his due-process rights, and we overrule the second assignment of error.

{¶19} In his fourth assignment of error, Richardson argues that he was denied the effective assistance of counsel due to counsel's failure to object to the admission of illegally-obtained evidence.

{¶20} Because the drugs were admissible for purposes of the revocation hearing, counsel's failure to object did not deprive Richardson of the effective assistance of counsel. We overrule the fourth assignment of error.

### The Manifest Weight of the Evidence

{¶21} In his third assignment of error, Richardson claims that the judgments of the trial court were contrary to the manifest weight of the evidence.

{¶22} A community-control-revocation hearing is not a criminal trial, and the state is not required to establish a violation of the terms of community control beyond a reasonable doubt. *State v. Messer*, 12th Dist. Butler No. CA2014-02-056, 2014-Ohio-5741, ¶ 12. To establish a violation, the state must present "substantial" evidence. *Id.* Therefore, we must apply the "some competent, credible evidence"

standard established in *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). *State v. Huitt*, 5th Dist. Stark No. 2007 CA 0060, 2007-Ohio-5816, ¶ 17. "This highly deferential standard is akin to a preponderance of evidence burden of proof." *Id.* Absent an abuse of discretion, the decision to revoke probation will not be disturbed on appeal. *Id.* at ¶ 18.

{¶23} Richardson first contends that he was unaware that the drugs were in the dresser. However, there is nothing in this record to support that claim. Additionally, the drugs were found in a dresser drawer that contained male clothing in Richardson's bedroom.

{¶24} Richardson next argues that the state failed to establish that the two cell phones belonged to him, and that he had the passcodes. Winter testified that she had seen Richardson using the cell phone with the red case and knew that it was his. She further testified that she believed the second phone was found on his person. When she requested the passcodes, Richardson refused to provide them. Moreover, Richardson asked the court to return his phones prior to the revocation hearing.

{¶25} With respect to the positive marijuana test and failure to pay his probation fees, Richardson contends these violations were de minimus and insufficient standing alone to justify a revocation. But these were not the only violations underlying the revocation.

{¶26} Based on this record, there was substantial evidence that Richardson violated the conditions of community control, and the trial court acted within its discretion to revoke Richardson's community control. We find no merit to the third assignment of error, and we overrule it.

## The Sentence

**{¶27}** Richardson next contends that the trial court erred by imposing a sentence that is not supported by the findings in the record.

**{¶28}** "In reviewing felony sentences, an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it 'clearly and convincingly' finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law." *State v. Reynolds*, 1st Dist. Hamilton No. C-190055, 2020-Ohio-942, ¶ 6. "Following a community control violation, the trial court conducts a second sentencing hearing. At this second hearing, the court sentences the offender anew and must comply with the relevant sentencing statutes." *State v. Fraley*, 105 Ohio St.3d 13, 2004-Ohio-7110, 821 N.E.2d 995, ¶ 17.

**{¶29}** Richardson argues that the trial court failed to follow R.C. 2929.11 and 2929.12 because the 12-month sentence was not necessary to protect the public and did not represent the minimum sanctions adequate to accomplish the purposes of felony sentencing.

**{¶30}** At the original sentencing hearing, the trial court notified Richardson that if he violated his community control, he would be incarcerated for 18 months on each case for a maximum potential aggregate sentence of 36 months. Prior to imposing sentence, the trial court noted that the violations were not technical violations and further specified that it had considered the principles and purposes of felony sentencing before imposing the sentence, and the record supports the sentence.

**{¶31}** Accordingly, we overrule his fifth assignment of error.

## Conclusion

**{¶32}** Having overruled Richardson's five assignments of error, we affirm the judgments of the trial court.

Judgments affirmed.

**CROUSE** and **WINKLER, JJ.,** concur.

Please note:

The court has recorded its own entry this date.