OPINION
{¶ 1} In this case, Promex Corporation (Promex) and Mad River Manor (MRM) appeal from a trial court decision awarding summary judgment to Cintas Corporation No. 2 (Cintas) and Casey Breeze. These parties were all named defendants in an action brought by Romelly McKay, who suffered personal injures while visiting her mother. At the time, McKay's mother was a resident at MRM, which is a Section 8 elderly facility for low-income elderly, handicapped, and disabled people.
 {¶ 2} At the time of McKay's accident, Promex was the managing agent for MRM. Promex employed Nancy Devolld to manage MRM and another property called Harding House. Devolld worked about twenty hours per week at each location. As office manager, she supervised all aspects of apartment management, including maintenance.
 {¶ 3} Cintas is in the business of renting uniforms, towels, and mats to various facilities. On May 5, 1998, Cintas and MRM entered into a "Standard Uniform Rental" agreement. Devolld signed the agreement in her capacity as MRM's agent. The agreement listed uniforms that Cintas was to furnish on a weekly basis, for two MRM employees. It also provided that:
 {¶ 4} "[t]his service agreement is effective as of the date of execution above and shall remain in effect for sixty (60) months from the date of installation. The agreement shall be automatically renewed for the same period of time unless the Company is notified, to the contrary, in writing, sixty days in advance of the expiration of the then current term. Upon each anniversary date of this agreement, the Company will automatically increase the prices then in effect by the amount of the increase in the Consumer Price Index for the previous 12 months or 5%.
 {¶ 5} "Customer hereby agrees to indemnify and hold the Company harmless from any claims arising out of or associated with the use of the product, including any claims allegedly arising from defects."
 {¶ 6} The agreement further stated that
 {¶ 7} "[a]dditional employees and products may be added to this agreement upon written or verbal request of the Customer. In the event of cancellation of this service agreement by the Customer prior to the termination date, other than for failure of the Company to perform under its guarantee, the Customer will pay the greater of 50% of the weekly service charge per week for the unexpired term, or buyback all the garments and other products in inventory at the rates listed above as replacement value."
 {¶ 8} McKay's accident occurred on January 25, 2000, which was within the contract term listed in the agreement. Several months before the accident, Cintas offered to deliver a floor mat for the front entrance of MRM, and Devolld accepted the floor mat. Devolld did not request a separate agreement for the mat. The invoice for the date of the accident lists uniforms, as well as several items that were not listed on the original rental agreement, including red shop towels, white shop towels, and a 4 by 6 black mat, which was the mat involved in the injury.
 {¶ 9} At the time of the accident, Casey Breeze was the route driver for Cintas. Breeze delivered and placed a newly laundered floor mat at MRM once a week, as part of his route. He also brought uniforms and the other items listed on the invoice. On the day of the accident, Breeze brought a mat to MRM and placed it on the floor just inside the front door, in the vestibule area.
 {¶ 10} McKay arrived at MRM about 5:00 p.m. that day to celebrate her mother's birthday. She carried in two packages through the entryway, and noticed the mat, but did not observe any problems. The mat appeared to be flat. McKay then placed her packages on a table in the reception area and turned to leave, to go back out to park her car. However, her foot caught on the mat and she fell down, fracturing her right knee.
 {¶ 11} Originally, McKay sued MRM, Promex, Cintas, and individual and corporate John Does, claiming that they had negligently placed a defective carpet in the entryway of the premises. McKay then filed an amended complaint, adding Breeze as a defendant. Also filed were cross-claims of the defendants against each other for contribution and/or indemnification, consistent with their status, i.e., MRM and Promex were aligned against Cintas and its employee, Breeze, and vice-versa.
 {¶ 12} MRM and Promex filed motions for summary judgment against McKay on issues of negligence and nuisance. Subsequently, Cintas and Breeze filed a motion for summary judgment against MRM and Promex on the cross-claims. Specifically, Cintas claimed that MRM had contractually agreed to indemnify Cintas for any claims associated with the use of Cintas's products.
 {¶ 13} Ultimately, the trial court overruled the MRM and Promex summary judgment motion, finding genuine issues of material fact concerning their liability to McKay. However, the court also concluded that Cintas and Breeze were entitled to summary judgment, based on the indemnification agreement. The trial court's decision was filed on October 30, 2002, and did not contain a Civ. R. 54(B) certification.
 {¶ 14} Subsequently, on April 21, 2003, the trial court filed an order labeled "Order of Dismissal (Case Settled)." In this order, the court noted that counsel had reported that the case was settled, and that the matter would be conditionally dismissed without prejudice until such time as a final dismissal entry with prejudice was filed.
 {¶ 15} An "Agreed Entry of Dismissal" was filed on August 18, 2003. This document contained the signature of the attorney for MRM and Promex, as well as telephone authorizations from the attorneys for McKay, Cintas, and Breeze. There was no signature line for a judge and the document was not signed by the trial judge.
 {¶ 16} The agreed entry stated as follows:
 {¶ 17} "Come now Plaintiff Romelly McKay and Defendants Mad River Manor Associates, Promex Midwest Corporation, Cintas Corporation No. 2 and Casey Breeze, by and through their respective counsel and hereby notify this Court that all disputes between Plaintiff and the named Defendants are resolved and Plaintiff hereby dismisses all Defendants with prejudice."
 {¶ 18} The entry further indicated that disputes between MRM, Promex, Cintas, and Breeze had been resolved through the court's interlocutory summary judgment decisions, and were now "final and appealable." MRM and Promex then filed a timely notice of appeal on September 17, 2003.
 Show Cause Order {¶ 19} After receiving the appeal, we filed a show cause order, raising questions about mootness and jurisdiction, due to the dismissal of Plaintiff's claims against all parties, and the derivative nature of indemnification and contribution claims. Promex and MRM filed a response to the order, contending that we have jurisdiction and that the appeal is not moot. Cintas and Breeze also responded to the show cause order, but said they would take no position on these issues.
 {¶ 20} As an initial point, we note that the entry of dismissal was not a judgment entry. Instead, it was a stipulation of dismissal under Civ. R. 41(A)(1)(b). See Shepherd v. United Parcel Serv. (1992),84 Ohio App.3d 634, 637 (lack of judge's signature and signature line for judge causes document labeled "entry" to be simply a stipulation of dismissal). See, also, Brackmann Communications, Inc. v. Ritter (1987),38 Ohio App.3d 107, 109 (outlining clear requirements for formal final journal entry or order for appeal purposes, including designation as decision or judgment entry or both, judge's signature, time-stamp, and where applicable, Civ. R. 54(B) determination and Civ. R. 54(B) language).
 {¶ 21} Under Civ. R. 41(A)(1), a plaintiff, without order of court, may dismiss all claims asserted against a defendant by doing either of the following:
 {¶ 22} "(a) filing a notice of dismissal at any time before the commencement of trial unless a counterclaim which cannot remain pending for independent adjudication by the court has been served by that defendant;
 {¶ 23} "(b) filing a stipulation of dismissal signed by all parties who have appeared in the action.
 {¶ 24} "Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits of any claim that the plaintiff has once dismissed in any court."
 {¶ 25} According to the Ohio Supreme Court, "a voluntary dismissal pursuant to Civ. R. 41(A) renders the parties as if no suit had ever been filed only against the dismissed parties." Denham v. New Carlisle,86 Ohio St.3d 594, 597, 1999-Ohio-128. In Denham, the trial court granted summary judgment in favor of one defendant, but did not include a Civ. R. 54(B) certification. The plaintiff then dismissed the remaining parties to the action. In considering whether the summary judgment became a final, appealable order, the Ohio Supreme Court noted that typically, an order is final and appealable only if the requirements of both Civ. R. 54(B) and R.C. 2505.02 are met. Id. at 596, citing Chef ItalianoCorp. v. Kent State Univ. (1989), 44 Ohio St.3d 86, 88.
 {¶ 26} The court also noted that a Civ. R. 41(A) dismissal leaves the parties "as if no action had been brought at all." Id. However, because the plaintiff in Denham did not dismiss her claims against the party receiving summary judgment, the Ohio Supreme Court found that the order granting summary judgment became a final, appealable order when the claims against the remaining parties were dismissed. Id. at 597.
 {¶ 27} In the present case, the plaintiff did not dismiss only the claims against Promex and MRM. Instead, she dismissed the claims against all defendants with prejudice. Our show cause order noted this point, and asked Appellants to discuss why we would still retain jurisdiction. Additionally, we mentioned mootness, as well as the derivative nature of cross-claims.
 {¶ 28} In responding to the show cause order, Appellants concede that the summary judgment decision in favor of Cintas and Breeze was an interlocutory order. However, they also argue that the procedural posture of this case is not an inherently inappropriate subject for appeal. In this regard, Appellants rely on two cases — Jones v. Ruhlin Co. (October 24, 1990), Summit App. No. 14568, 1990 WL 163864, and Henry v.Consolidated Stores, Internl. Corp. (1993), 89 Ohio App.3d 417. We did not find either case helpful.
 {¶ 29} Specifically, the record in Jones is silent concerning the procedural posture of the case, i.e., it does not indicate that the plaintiff had dismissed her claims before the trial court entered summary judgment on the indemnification claim. 1990 WL 163864, *1. Further, the plaintiff's claims in Consolidated remained pending in the trial court while the grant of summary judgment for two defendants was appealed.89 Ohio App.3d at 419. In fact, one of the appeals was dismissed because it did not contain a Civ. R. 54(B) certification. Id. at 421. Obviously, this is not the situation in the present case.
 {¶ 30} After Denham, lower courts have rejected appeals from interlocutory decisions where the plaintiff has dismissed the claims against all defendants. This is based on the theory that dismissal of all plaintiff's claims under Civ. R. 41(A) "`renders the parties as if no suit had ever been filed.'" Denham, 86 Ohio St.3d 594, 597. For example, inStohlman v. Koski-Hall, Cuyahoga App. No. 82660, 2003-Ohio-7068, some (but not all) defendants received summary judgment on the plaintiff's claims, and the trial court did not include a Civ. R. 54(B) certification. 2003-Ohio-7068, at ¶ s 2 and 8. The plaintiff then dismissed the entire complaint without prejudice and filed an appeal from the summary judgment decision. Id. at ¶ 3. However, the Eighth District Court of Appeals dismissed the appeal for lack of jurisdiction. The Eighth District first found that the summary judgment decisions satisfied R.C. 2505.02, by affecting a substantial right in an action that, in effect, determined the action and prevented a judgment. Id. at ¶ 7. However, the court also found that the summary judgment decisions were not final appealable orders when they were entered. As a result, the plaintiff in Stohlman failed to recreate the circumstances in Denham when she dismissed all the defendants, not just the "remaining" defendants left after summary judgment. The Eighth District noted that the dismissal left the parties as if no action had been brought at all. Id. at ¶ s 9-10. It also rendered the interlocutory orders nullities, and the orders were not appealable. Id. at ¶ 10.
 {¶ 31} The Sixth District Court of Appeals came to the same conclusion in Toledo Heart Surgeons v. The Toldeo Heart Hospital, Lucas App. No. L-02-1059, 2002-Ohio-2277. In that case, a hospital received summary judgment on some, but not all claims brought by a physician. 2002-Ohio-2277, at ¶ s 1-4. The physician subsequently dismissed the action without prejudice, and appealed from the summary judgment decision. Id. at ¶ s 8 and 11. On appeal, the Sixth District granted the hospital's motion to dismiss the doctor's appeal. Although the trial court had stated in the summary judgment decisions that the claims were dismissed with prejudice, and a party might, therefore, conclude that the orders were final as to the claims addressed, the Sixth District noted that the trial court's failure to state that there was "no reason for delay" meant that the orders were not final. Id. at ¶ 23. In this regard, the court observed that:
 {¶ 32} "`Rule 54(B) makes mandatory the use of the language, "there isno just reason for delay." Unless those words appear where multiple claims and/or multiple parties exist, the order is subject tomodification and it cannot be either final or appealable. * * * The required language puts the parties on notice when an order or decree has become final for purposes of appeal.'" Id. at ¶ 24, citing Noble v.Colwell (1989), 44 Ohio St.3d 92 (emphasis added by the Sixth District).
 {¶ 33} After discussing Denham and the Ninth District Court of Appeals' interpretation of that case, the Sixth District commented that:
 {¶ 34} "[w]e agree with the Ninth District and find that under the holding in Denham v. New Carlisle, no other outcome is possible. We hold that an order which grants a motion for summary judgment or a dismissal for failure to state a claim upon which relief can be granted to a party while claims against other parties are pending, and which does not contain Civ. R. 54(B) language that there is no just reason for delay, is not appealable when the entire action is later dismissed without prejudice to Civ. R. 41(A). Rather, such order is dissolved and has no resjudicata effect." Id. at ¶ 35.
 {¶ 35} While these cases could be interpreted as requiring dismissal of the present appeal, they are also not procedurally identical, because they did not involve cross-claims. As a result, while the logic has some force, we do not find these cases controlling.
 {¶ 36} In a more closely related fact pattern, we have held that counterclaims and cross-claims survive a Civ. R. 41 dismissal by a plaintiff. See Siatis v. Shaw, Montgomery App. No. 19207, 2003-Ohio-616, at ¶ 13 (holding that a defendant in a declaratory judgment action may still pursue a cross-claim after plaintiff's Civ. R. 41(A) dismissal of the complaint). Accord, Ballenger v. Rickman (Mar. 16, 2000), Franklin App. No. 99AP-774, 2000 WL 279290, *3 (voluntary dismissal of underlying complaint does not extinguish cross-claim), and Commercial Union Ins.Co. v. Great American Ins. Co. (1997), 124 Ohio App.3d 1, 12. But, see,Armbrust v. United Tel. Co. of Ohio, Inc. (1997), 119 Ohio App.3d 497,499-501 (holding that voluntary dismissal terminated case, pendency of cross-claims did not affect dismissal, and cross-claims became moot after the underlying case was dismissed).
 {¶ 37} Our decision in Siatis was based on the rule that "a plaintiff may not employ Civ. R. 41 to defeat a meritorious counterclaim by dismissing the underlying action." 2003-Ohio-616, at ¶ 14. Admittedly, such motives are not at issue in the present case. However, Siatis did not restrict its application to such situations. In addition, Siatis
involved a pending cross-claim, not a counterclaim. Id. Therefore, we see no basis for distinguishing Siatis.
 {¶ 38} Accordingly, we deem the show cause order satisfied, and the appeal will be allowed to proceed. We turn now to the merits of this case.
 The Propriety of Summary Judgment {¶ 39} Appellants' single assignment of error is that "the trial court erred in granting Co-Defendants Cintas Corporation No. 2 and Casey Breeze's Motion for Summary Judgment." After considering the record and applicable law, we find the assignment of error without merit. Consequently, the judgment of the trial court will be affirmed.
 {¶ 40} Our review of summary judgment decisions is de novo, i.e., we apply the standards that the trial court uses. See, e.g., Long v. TokaiBank of California (1996), 114 Ohio App.3d 116, 119. These standards are well established, and indicate that:
 {¶ 41} "summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor."Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367, 369-370.
 {¶ 42} As we mentioned earlier, McKay's injury was allegedly caused when she tripped on a black floor mat in MRM's entryway. The floor mat was not one of the products listed on the original contract. However, the parties agreed, at least several months before the accident, that Cintas would deliver a floor mat to MRM. In this regard, the original agreement provides that "[a]dditional employees and products may be added to this agreement upon written or verbal request of the Customer." Despite the fact that such a verbal request was admittedly made, MRM and Promex argue that the original agreement does not show an intent to contract for floor mats. They also claim there was no "meeting of the minds" after the original agreement with regard to contracting for floor mats. We disagree.
 {¶ 43} "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." Sun Design Systems, Inc. v. Tirey, (Apr. 19, 1996), Miami App. No. 95-CA-46, 1996 WL 200619, *4, citing Inland Refuse Transfer Co.v. Browning-Ferris Industries of Ohio, Inc. (1984), 15 Ohio St.3d 321,322. In the present case, we find no ambiguity in the contract. To the contrary, the contract stated that products could be added, by verbal or written request of the customer. Clearly, that occurred in this case, as Devolld, who was Appellants' manager and agent, verbally requested delivery of additional items like towels and the floor mat, after the original contract was signed. Those items were delivered, and Devolld approved payment, on behalf of Appellants, each time she received invoices for the products.
 {¶ 44} Devolld testified that she read the original contract before she signed it. In this regard, Devolld testified as follows:
 {¶ 45} "Q. Did you read it [the contract] before you put your signature on it?
 {¶ 46} "A. Yes, I did.
 {¶ 47} "Q. Did you see in this contract where it said additional employees and products may be added to this agreement upon written or verbal request of the customer?
 {¶ 48} "A. I guess I wasn't that aware of that phrase.
 {¶ 49} "Q. Okay. And when you made the request of Cintas, did you indicate it was to be in another agreement?
 {¶ 50} "A. No.
 {¶ 51} "Q. When you received uniforms, which were pants and shorts, did you receive an invoice for that?
 {¶ 52} "A. Yes.
 {¶ 53} "Q. The invoice that you would receive for the pants and the shirts, was that part of this contract?
 {¶ 54} "Yes.
 {¶ 55} "Q. Okay. Handing you Defendants' Exhibit D, this is an invoice from January 25th of 2000 [the date of the accident], is that correct?
 {¶ 56} "A. That's correct.
 {¶ 57} "Q. It has on this invoice uniforms for Dwayne Taylor and Debbie Napier, is that correct?
 {¶ 58} "A. That's correct.
 {¶ 59} "Q. Was that invoice part of this Standard Uniform Rental Contract?
 {¶ 60} "A. Yes.
 {¶ 61} "Q. And it also on that same invoice, which is part of this contract, lists a four by six black mat, is that correct?
 {¶ 62} "A. That's correct."
 {¶ 63} Devolld's lack of awareness or recollection of contract terms that she read does not excuse Appellants from a contractually mandated obligation to indemnify Cintas for claims arising from the use of its products. As we have previously stressed,
 {¶ 64} "`"[i]t will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law. A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission."'" Campco Distributors, Inc. v. Fries
(1987), 42 Ohio App.3d 200, 203, quoting from McAdams v. McAdams (1909),80 Ohio St. 232, 241. See, also, Hadden Co., L.P.A. v. Del Spina,
Franklin App. No. 03AP-37, 2003-Ohio-4507, at ¶ 16 and Whelan v. E.F.Hutton Credit Corporation (Dec. 15, 1983), Cuyahoga App. No. 46724, 1983 WL 2923, *2 (parties are presumed to have read what they signed).
 {¶ 65} In arguing that summary judgment was improper, Appellants focus on statements from Devolld, to the effect that she did not "understand" that delivery of the floor mat was part of the contractual relationship she had with Cintas. However, the fact that Devolld did not "understand" is irrelevant, since she is held to have known what the contract contained. The contract clearly says that products can be added, by verbal or oral request of the customer. Devolld testified that she verbally requested delivery of floor mats, and authorized payment for the mats. In addition, the contract number referenced on the January 25, 2000 invoice for the floor mat is "00432." This is the same number used for the original contract. Again, Appellants cannot avoid their contractual obligations by pleading ignorance or lack of memory of contract terms.
 {¶ 66} An oral agreement, "to have the effect of altering a prior written contract, must be a valid and binding contract in its own right resting upon some new and distinct consideration." Richland Builders v.Thome (1950), 88 Ohio App. 520. See, also, e.g., Valmac Industries, Inc.v. Ecotech Machinery, Inc. (2000), 137 Ohio App.3d 408, 412. Strictly speaking, the oral agreements in this case might not be considered "modifications," since they did not modify the contract terms. Instead, they were additions to the contract that were fully consistent with, and expressly contemplated by the contract itself.
 {¶ 67} "`A modification is a change or an alteration which introduces new elements into the details or cancels some of them, but leaves the general purpose and effect of the subject matter intact. It is such change in a contract as leaves the original thing in operation, so far as its general purpose and effect are concerned. It must not make any substantially new engagement from the old one. Therefore, so long as the modifications are made as provided by law, and the changes thus entered into do not substantially affect the general purpose and operation of the old contract, then such modification could be made and would be lawful.'"Alfa-Laval, Inc. v. Cow Supply, Inc. (May 8, 1990), Crawford App. No. 3-88-18, 1990 WL 61743, *4-5 (citation omitted).
 {¶ 68} Whether one considers floor mats a "modification" or an "addition" to the contract, new consideration did exist, since Appellants received floor mats and Cintas charged for the mats.
 {¶ 69} Generally, additional contract terms "supersede the original terms to the extent the two are contradictory. If the additional terms are ambiguous, then we are to give effect to the additional terms but we are to interpret them consistently with the original terms to the extent possible." Ottery v. Bland (1987), 42 Ohio App.3d 85, 87.
 {¶ 70} As we mentioned, no actual "terms" were added to the contract, so there is nothing to be superseded. Products were simply added, as allowed by the written contract. Furthermore, the contract is not ambiguous, so there is nothing to construe.
 {¶ 71} "`"[T]he first general maxim of interpretation * * * is, that it is not allowable to interpret what has no need of interpretation. When a * * * [writing] is worded in clear and precise terms; when its meaning is evident, and tends to no absurd conclusion, there can be no reason for refusing to admit the meaning which * * * [it] naturally presents. * * *"'" Allen v. Standard Oil Co. (1982), 2 Ohio St.3d 122, 124, quoting from Lawler v. Burt (1857), 7 Ohio St. 340, 350.
 {¶ 72} Ohio law "generally allows enforcement of indemnity agreements." Glaspell v. Ohio Edison Co. (1987), 29 Ohio St.3d 44, 46. InGlaspell, the Ohio Supreme Court noted that: "[w]hile clauses limiting the liability of the drafter are ordinarily to be strictly construed, such strict construction need not be applied in the interpretation of an indemnification agreement entered into between business entities in a context of free and understanding negotiation." Id. at 44-45, paragraph one of the syllabus. In this regard, the Ohio Supreme Court stressed that the business entities were "commercial enterprises of sufficient size and quality as to presumably possess a high degree of sophistication in matters of contract." Id. at 47.
 {¶ 73} The agreement in the present case is also between business entities of sufficient size and quality, such that one would presume a significant degree of sophistication. The fact that an agent signed the contract on behalf of Promex and MRM does not mean that these corporations lacked the sophistication and ability to negotiate freely and with understanding of the consequences. The further fact that the agent may not have remembered what she read is not a reason to excuse Promex and MRM from complying with the clear terms of the indemnification agreement.
 {¶ 74} Accordingly, we agree with the trial court that no genuine issues of fact exist concerning the liability of Promex and MRM in connection with the indemnity agreement. Therefore, the single assignment of error is overruled and the judgment of the trial court is affirmed.
Wolff, J., and Grady, J., concur.