[Cite as *Guehl v. Carillon House Assn., Inc.*, 2017-Ohio-5491.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| ROBERT GUEHL, et al. | : | |
| | : | |
| *Plaintiffs-Appellants* | : | Appellate Case No. 27438 |
| | : | |
| v. | : | Trial Court Case No. 2015-CV-4872 |
| | : | |
| CARILLON HOUSE ASSOCIATION, | : | (Civil Appeal from |
| INC., et al. | : | Common Pleas Court) |
| | : | |
| *Defendant-Appellee* | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of June, 2017.

. . . . . . . . . . .

ROBERT GUEHL, Attorney Reg. No. 0005491, 2312 Far Hills Avenue, Suite 350, Dayton, Ohio 45419
        Plaintiffs-Appellants-Pro Se

ROBERT E. KMIECIK, Atty. Reg. No. 0022545, GARRETT B. HUMES, Atty. Reg. No. 0089326, 470 Olde Worthington Road, Suite 460, Westerville, Ohio 43082
        Attorneys for Defendant-Appellee

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} In this case, Plaintiffs/Appellants, Robert Guehl and Karen Bartley, (collectively referred to as "Guehl") appeal from a judgment dismissing their legal

malpractice claim against Defendant/Appellee, Kaman & Cusimano, LLC ("Kaman").   As support for their appeal, Guehl contends that Count Five of the complaint adequately stated a claim against Kaman.

{¶ 2} We conclude that the trial court did not err in dismissing Guehl's claim for legal malpractice pursuant to Civ.R. 12(B)(6).   Guehl did not have an attorney-client relationship with Kaman, and Guehl was not in privity with Kaman's client.   As a result, Kaman was not liable to Guehl for any alleged legal malpractice.   Accordingly, the judgment of the trial court will be affirmed.

I.   Facts and Course of Proceedings

{¶ 3} All the factual information in the statement of facts and proceedings will be taken from the complaint and amendments to the complaint filed in the trial court.   Since 2007, Robert Guehl had owned condominium #11 in the Carillon House Condominiums located at 2230 S. Patterson Boulevard, Kettering, Ohio.   In September 2015, Guehl filed a complaint against Carillon House Association, Inc. ("Carillon") and Towne Properties Asset Management Company ("Towne").   Carillon was a non-profit organization consisting of the members who owned condominium units, and Towne was a management company that had managed the property between 1999 and 2014.

{¶ 4} Guehl also added U.S. Bankcorp dba U.S. Bank Home Mortgage ("US Bank") as an involuntary plaintiff.   According to the complaint, Robert Guehl had purchased his condominium for $115,000 in 2007, had added improvements, and currently owed US Bank more than $69,000.   Robert claimed his mortgage was "underwater," jeopardizing both his and the bank's equity interests.

{¶ 5} In essence, the complaint alleged that Carillon's board of directors ("Board")

failed to adequately set aside funds for reasonably anticipated capital improvements, and had caused Guehl's property to be unmarketable due to the likelihood of special assessments. The complaint contained four counts: (1) for a declaratory judgment that Carillon's board was required to adopt a budget for reserves adequate to repair and replace major capital items without the need for special assessments; (2) for breach of contract against Towne, based on its failure, among other things, to adequately inspect the building and advise Carillon about adequate reserve funding; (3) for negligence against Carillon and Towne, for failure to adequately monitor maintenance of the building and construction projects; and (4) for breach of fiduciary duty by the Board based on various failures pertaining to budgeting, overseeing Towne, repairing the property, and pursuing legal action against Towne.

{¶ 6} In October 2015, Towne filed a Civ.R. 12(B)(6) motion to dismiss; Guehl then dismissed Towne as a party in November 2015, pursuant to Civ.R. 41(A). In November 2015, Guehl also filed a first amended complaint, which added various past and current members of the Board to the lawsuit. The amended complaint contained essentially the same allegations, but eliminated former Count Two, which had raised Towne's breach of contract. Instead, former Count Three became Count Two, in which Guehl alleged that the Board and members of the Board had been grossly negligent in several ways, including: failing to monitor Towne's maintenance of the property, failing to maintain the building, failing to adequately budget, and so forth.

{¶ 7} Former Count Four (breach of fiduciary duty) now became Count Three, and Guehl included the past and current members of the Board in the claims for breach of fiduciary duty. Finally, in new Count Four, Guehl asked for injunctive relief against the

Board members, to prevent them from continuing their alleged fraudulent acts.

{¶ 8} Subsequently, on December 5, 2015, Guehl filed a motion for partial summary judgment on two points: (1) the interpretation of R.C. 5311.08(A) as applied to Carillon's reserve budgeting process; and (2) the current Board's alleged neglect and breaches in connection with the 2015-2016 budgeting process. In January 2016, Carillon and several Board members filed an answer to the first amended complaint. Among other things, they alleged that Robert Guehl, himself, was on the Board from July 1, 2007 to June 21, 2010, and from June 20, 2011 to June 16, 2014, and had taken the actions about which he was complaining.

{¶ 9} In February 2016, Guehl filed a cross-complaint against an entity called Five Brothers, which was involved in a foreclosure action that US Bank had brought against Robert with respect to the Carillon condominium. Guehl also added the real estate listing agent for the condominium as an involuntary plaintiff. In addition, Guehl asked the court to consolidate the foreclosure action with the current action. However, the court overruled the motion in April 2016, finding insufficient commonality of issues. Eventually, in June 2016, Guehl dismissed US Bank, Five Brothers, and the real estate agent from the current action. At this point, Carillon and the Board members were the only parties remaining in the case.

{¶ 10} Previously, in April 2016, the parties had agreed to suspend briefing on the summary judgment motion until after discovery had been completed. In late July 2016, Guehl filed a motion asking for leave to file a second amended complaint to add Kaman, a law firm that had handled legal matters for Carillon. The court granted leave in September 2016, and Guehl then filed a second amended complaint, adding Kaman as

a party. Guehl also added Count Five, which was a legal malpractice claim against Kaman. In this count, Guehl alleged that Kaman had provided incorrect and negligent advice regarding adequate funding of reserves, and that as a result of Kaman's negligence, Guehl and other owners of units had suffered damages in the form of special assessments on two separate occasions, and anticipated an additional assessment of 1.8 million dollars.

{¶ 11} On October 7, 2016, Kaman filed a Civ.R. 12(B)(6) motion to dismiss Count Five of the Second Amended Complaint. The motion contended that Guehl lacked standing to file a claim for legal malpractice against the law firm. After Guehl responded to the motion, the trial court granted the motion on January 11, 2017, and dismissed Count Five. The trial court also added a Civ.R. 54(B) certification. Subsequently, on January 23, 2017, Guehl filed a motion for reconsideration, which the trial court denied, stating that final appealable orders cannot be reconsidered. Guehl then appealed the dismissal of Count Five of the Second Amended Complaint.

## II. Did the Court Err in Dismissing the Legal Malpractice Claim?

{¶ 12} Guehl's sole assignment of error states that:

The Trial Court Erred in Dismissing Count 5 of the Complaint Pursuant to Civil Rule 12(B)(6). Count 5 Adequately Stated a Cause of Action for Legal Malpractice Against Defendant Kaman & Cusimano, LLC.

{¶ 13} Under this assignment of error, Guehl contends that the trial court erred by granting Kaman's motion to dismiss because the complaint stated operative factual allegations of an attorney-client relationship between Guehl and Kaman that was sufficient to withstand a motion to dismiss. Guehl also argues that the trial court made

factual determinations without any evidentiary basis, while disregarding evidence presented by Guehl.

{¶ 14} Before we address these issues, we must first consider whether we have jurisdiction over the appeal, which is a matter that we can raise on our own motion. *See, e.g., Care Risk Retention Group v. Martin*, 191 Ohio App.3d 797, 2010-Ohio-6091, 947 N.E.2d 1214, ¶ 97 (2d Dist.), citing *State ex rel. White v. Cuyahoga Metro. Hous. Auth.*, 79 Ohio St.3d 543, 544, 684 N.E.2d 72 (1997).

## A. Final Appealable Order Status

{¶ 15} "An order of a court is final and appealable only if it meets the requirements of both Civ.R. 54(B) and R.C. 2505.02." (Citation omitted.) *Denham v. New Carlisle*, 86 Ohio St.3d 594, 596, 716 N.E.2d 184 (1999). *Accord McKay v. Promex Midwest Corp.*, 2d Dist. Montgomery No. 20112, 2004-Ohio-3576, ¶ 25.

{¶ 16} As pertinent here, R.C. 2505.02(B)(1) provides that an order is final for purposes of appeal if it is "[a]n order that affects a substantial right in an action that in effect determines the action and prevents a judgment * * *." "The term 'substantial right' has been construed to mean a 'legal right,' one protected and supported by law." (Citation omitted.) *Hamilton Cty. Bd. of Mental Retardation & Developmental Disabilities v. Professionals Guild of Ohio*, 46 Ohio St.3d 147, 153, 545 N.E.2d 1260 (1989). "A court order which deprives a person of a remedy which he would otherwise possess deprives that person of a substantial right." *Chef Italiano Corp. v. Kent State Univ.*, 44 Ohio St.3d 86, 88, 541 N.E.2d 64 (1989). Furthermore, "[f]or an order to determine the action and prevent a judgment for the party appealing, it must dispose of the whole merits of the cause or some separate and distinct branch thereof and leave nothing for the

determination of the court." (Citations omitted.) *Hamilton Cty. Bd. of Mental Retardation & Developmental Disabilities* at 153.

{¶ 17} Under these standards, the order in question did affect a substantial right, as it deprived Guehl of a remedy for legal malpractice and prevented him from obtaining a judgment against Kaman. Nonetheless, the trial court dismissed only one count of the complaint, while leaving claims against other parties pending. In such situations, Civ.R. 54(B) requires the court to expressly determine "that there is no just reason for delay." Consistent with this rule, the trial court attached a Civ.R. 54(B) certification to the end of its decision, and stated there was no just reason for delay. The Supreme Court of Ohio has said that this is "essentially a factual determination – whether an interlocutory appeal is consistent with the interests of sound judicial administration." *Wisintainer v. Elcen Power Strut Co.*, 67 Ohio St.3d 352, 617 N.E.2d 1136 (1993), paragraph one of the syllabus. In *Wisintainer*, the court further stressed that:

> In making its factual determination that the interest of sound judicial administration is best served by allowing an immediate appeal, the trial court is entitled to the same presumption of correctness that it is accorded regarding other factual findings. An appellate court should not substitute its judgment for that of the trial court where some competent and credible evidence supports the trial court's factual findings.

*Id.* at 355, citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984).

{¶ 18} Trial courts do not have to give reasons for their Civ.R. 54(B) decisions, " 'so long as the record supports adding the language.' " *Winkle v. Co*, 2d Dist.

Montgomery No. 27066, 2016-Ohio-6957, ¶ 48, quoting *Dywidag Sys. Internatl., USA, Inc. v. Ohio Dept. of Transp.*, 10th Dist. Franklin No. 10AP-270, 2010-Ohio-3211, ¶ 29. However, "the presumption of correctness does not apply * * * where the judgment entry indicates the trial court acted reflexively and employed the language as boilerplate." (Citation omitted.) *Dywidag* at ¶ 29.

{¶ 19} In the case before us, the trial court did not discuss its reasons for the certification. Instead, the language at the end of the entry appears to be boilerplate. Consequently, we look to the record to see if it supports the court's decision. Aid in doing so comes from analysis outlined in our prior opinion in *LaMusga v. Summit Square Rehab, L.L.C.*, 2015-Ohio-5305, 43 N.E.3d 504 (2d Dist.). In that case, we discussed Civ.R. 54(B) and 1992 amendments to Civ.R. 54(B) and App.R. 4 that occurred in response to *Chef Italiano.* *Id.* at ¶ 26-27. We noted that these amendments were intended to clarify that Civ.R. 54(B) applies to multiple claims arising from separate transactions as well as to multiple claims arising from the same transaction. *Id.* at ¶ 27, citing *Walker v. Firelands Community Hosp.*, 6th Dist. Erie No. E-06-023, 2006-Ohio-2930, ¶ 16, and 1992 Staff Notes to Civ.R. 54(B).

{¶ 20} We further noted the Supreme Court of Ohio's discussion about the 1992 amendments and federal law interpreting Fed.R. Civ.54(B). *LaMusga* at ¶ 28, discussing *State ex rel. Wright v. Ohio Adult Parole Auth.*, 75 Ohio St.3d 82, 661 N.E.2d 728 (1996). In *Wright*, the court stressed that " '[i]f claims are factually separate and independent, multiple claims are clearly present,' " and that " '[t]wo legal theories that require proof of substantially different facts are considered separate claims for purposes of Civ.R. 54(B).' " *Id.*, quoting *Wright* at 86, 661 N.E.2d 778. Accordingly, we concluded that the

appropriate analysis under *Wright*, as articulated by the Sixth District Court of Appeals, was as follows:

> "First, are the disposed of claim(s) factually separate and independent from the remaining claim(s)? An example would be claims that are based on different transactions or occurrences such as one claim for slander and another for negligence because of an automobile accident. Second, if the claims are not factually separate and independent, do the legal theories presented in the disposed of claim(s) require proof of substantially different facts and/or provide for different relief from the remaining claim(s)?"

*LaMusga,* 2015-Ohio-5305, 43 N.E.3d 504, at ¶ 29, quoting *Walker*, 6th Dist. Erie No E-06-023, 2006-Ohio-2930, at ¶ 23. (Other citation omitted.)

{¶ 21} Applying this analysis to the case before us, the legal malpractice claim was connected to some facts asserted in the negligence and breach of fiduciary duty claims. However, the malpractice claim involved a discrete portion of the case, and also involved different transactions than other claims that remained.

{¶ 22} Specifically, the complaint alleged that Kaman, since its retention by Carillon, had rendered incorrect advice about waiver of adequate reserve funding under R.C. 5311.081(A)(1). This was a limited claim involving a specific issue. In contrast, the claims against Carillon and the Board members covered a wide range of facts and transactions, including failures to adequately staff, maintain, and inspect the condominium building, failure to adequately supervise contractors, failure to use good management practice in anticipating expenses over the life expectancy of capital projects, and failure to adopt assessments to fund budgets for operations and reserves. Several

different projects were also involved, including roof replacement, parking deck maintenance, parking garage maintenance, swimming pool maintenance, deterioration of the HVAC system, and deterioration of the common plumbing system. Doc. # 110, Second Amended Complaint, pp. 9-12.

{¶ 23} Furthermore, punitive damages would have been permissible against Carillon and the Board members for gross negligence and breach of fiduciary duty, whereas punitive damages would not be allowed for the law firm's alleged negligence, in the absence of malice or gross negligence. Compare *Schafer v. RMS Realty*, 138 Ohio App.3d 244, 301, 741 N.E.2d 155 (2d Dist.2000) (punitive damages are allowed for breach of fiduciary duty) with *Preston v. Murty*, 32 Ohio St.3d 334, 335, 512 N.E.2d 1174 (1987) ("something more than mere negligence is always required" for recovery of punitive damages).

{¶ 24} In a similar situation in *LaMusga*, we concluded that a final appealable order existed. *LaMusga*, 2015-Ohio-5305, 43 N.E.3d 504 at ¶ 32-24. Accordingly, we conclude that the order dismissing Count Five of the Second Amended Complaint is a final appealable order and that we have jurisdiction over the appeal.

B. Whether Guehl Had Standing to Assert Legal Malpractice Claims

{¶ 25} As was noted, Guehl contends that the trial court erred in dismissing Count Five of the complaint because the complaint contained sufficient allegations to withstand a motion to dismiss.

{¶ 26} "In order for a court to dismiss a complaint for failure to state a claim upon which relief can be granted (Civ.R.12(B)(6)), it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." (Citation

omitted.) *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus. In deciding such motions, courts presume the truth of all factual allegations in a complaint and construe all reasonable inferences in favor of non-moving parties. (Citations omitted.) *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). We review the trial court's decision on a de novo basis. *Grover v. Bartsch*, 170 Ohio App.3d 188, 2006-Ohio-6115, 866 N.E.2d 547, ¶ 16 (2d Dist.).

**{¶ 27}** The trial court concluded that Guehl lacked standing to sue because Kaman and Guehl did not have an attorney-client relationship, and Guehl was not in privity with Kaman. As noted, the allegations of the complaint are accepted as true. Count Five of the Second Amended Complaint states as follows:

> Kaman & Cusimano [hereafter "Kaman"] has served as legal counsel to the Carillon House Association, Inc., consisting of the Owners of condominium units within the Carillon House condominium building located at 2230 S. Patterson Boulevard, Kettering, Ohio, and the Owners['] duly-elected Board of Directors.

> Plaintiff [sic] are "Owners" of Unit #11 in the Carillon House and both have served on the Board of Directors of the Association in various capacities, and in such capacities are and have been clients of Kaman.

> Kaman advised and has continually advised since retention as legal counsel, the Board of Directors and Owners of Defendant Carillon that Special Assessments could be waived on an annual basis by vote of the Owners of Carillon condominium units, in contravention of the specific

requirements of O.R.C. § 5311.081(a)(1).

Kaman's advice concerning waiver of adequate funding of reserves is incorrect and negligent in regard to its legal representation of the Board and Owners of units in Carillon House, insofar as the statute does not allow for waiver of the obligation to adequately budget reserves except in the single instance where the Reserve budget amounts to less than ten percent of the Association's annual budget for operation expenses.

The Reserve budget in each applicable year for Reserves amounted to more than ten percent of Defendant Carillon's operating budget, thus precluding a waiver of Reserve budgeting on an annual basis during all applicable time frames relevant to this lawsuit.

As a direct and proximate consequence of Kaman's mistaken and negligent advice concerning Special Assessments in violation of O.R.C. § 5311.081(a)(1), Plaintiffs (along with all other Owners of units in the Building) have suffered damages in the form of Special Assessments from Defendant Carillon on two separate occasions, and anticipated additional assessment of 1.8 million.

Plaintiffs have suffered damages in the form of payment of Special Assessments in excess of Twelve Thousand Dollars ($12,000.00) as well as decreased valuation of their respective units due to negligent advice from Kaman regarding financing.

Doc. #110, Second Amended Complaint, pp. 13-14, ¶ 54-60.

{¶ 28} The issue is whether in view of these allegations, Guehl has a cause of

action for legal malpractice claims against Kaman. "To establish a cause of action for legal malpractice based on negligence, the following elements must be proved: (1) an attorney-client relationship, (2) professional duty arising from that relationship, (3) breach of that duty, (4) proximate cause, (5) and damages." (Citations omitted.) *Shoemaker v. Gindlesberger*, 118 Ohio St.3d 226, 2008-Ohio-2012, 887 N.E.2d 1167, ¶ 8.

{¶ 29} If an attorney-client relationship is established, the first prong is satisfied. Where such a relationship is not established, "attorneys in Ohio are not liable to a third party for the good-faith representation of a client, unless the third party is in privity with the client for whom the legal services were performed." *Shoemaker* at ¶ 9, citing *Scholler v. Scholler*, 10 Ohio St.3d 98, 462 N.E.2d 158 (1984), paragraph one of the syllabus. In *Shoemaker*, the court stressed that "[t]his rule is rooted in the attorney's obligation to direct attention to the needs of the client, not to the needs of a third party not in privity with the client." *Id.*, citing *Simon v. Zipperstein*, 32 Ohio St.3d 74, 76, 512 N.E.2d 636 (1987). *Shoemaker* also stated that "[t[he necessity for privity may be overridden if special circumstances such as 'fraud, bad faith, collusion or other malicious conduct' are present." *Shoemaker* at ¶ 11, quoting *Zipperstein* at 76.

{¶ 30} Recently, we considered the extent to which attorneys can be sued by third parties to the attorney-client relationship. *See Omega Riggers & Erectors, Inc. v. Koverman*, 2016-Ohio-2961, 65 N.E.3d 210 (2d Dist.). *Omega Riggers* involved individual claims of minority shareholders against a corporate attorney. The claims arose from the attorney's involvement in a sale of assets of a closely held corporation. *Id.* at ¶ 3-4.

{¶ 31} We stressed that in the absence of an attorney-client relationship, "case law

has developed three potential avenues around, or substitutes for, such a relationship: (1) the claimant is so situated that it is deemed in 'privity' with the actual client, (2) the attorney acted with malice toward the claimant such that an action for recovery is justified, or (3) the injury or damages caused by a tortfeasor to a corporate shareholder claimant are unique and distinct from those suffered by other shareholders, which justify a direct claim by the shareholder against the tortfeasor."   *Id.* at ¶ 23.   After making these remarks, we considered a line of cases in which the Supreme Court of Ohio had considered the ability of third parties to sue attorneys.   *Id.* at ¶ 24-27.   We ultimately concluded that:

> [T]he privity substitute for lack of an attorney-client relationship has been extended only to undeniably-vested beneficiaries of an estate and to the limited partners of a partnership.   The exception has not been extended to minor children affected by representation of a parent in a divorce or to potential beneficiaries of a will.   Significantly, there is no Ohio case that has extended the privity concept to allow a shareholder, who does not have a direct attorney-client relationship with corporate counsel, to sue a corporation's attorney for malpractice.   We do not believe we should create one.

*Id.* at ¶ 29.

**{¶ 32}** With these principles in mind, we will consider first, whether Guehl had an attorney-client relationship with Kaman.

(i)   Existence of Attorney Client Relationship

**{¶ 33}** Guehl's appellate brief acknowledges our decision in *Omega Riggers*, but argues that in contrast to that case, the parties here "did not dispute" the issue of "a direct

attorney-client relationship between the parties." Merit Brief of Plaintiffs-Appellants, p. 6. This assertion misrepresents the record.

{¶ 34} In the trial court, Robert Guehl argued that he had a direct attorney-client relationship because he was a member of the Board and had communications with Kaman.[1] Kaman specifically disputed Guehl's position, and asserted that in Ohio, "Corporate Board members do not, as a matter of law, have an attorney-client relationship with the lawyer for the corporation." Doc. #121, p. 4. *See also* Doc. #129, p. 2, in which Kaman responds to, and rejects, Guehl's contention that Board members and unit owners had attorney-client relationships with Kaman because Kaman communicated with them.

{¶ 35} The Supreme Court of Ohio has said that "[w]hile it is true that an attorney-client relationship may be formed by the express terms of a contract, it 'can also be formed by implication based on conduct of the lawyer and expectations of the client.' " (Citations omitted.) *Cuyahoga Cty. Bar Assn. v. Hardiman*, 100 Ohio St.3d 260, 2003-Ohio-5596, 798 N.E.2d 369, ¶ 10. "The determination of whether an attorney-client relationship was created turns largely on the reasonable belief of the prospective client." (Citation omitted.) *Id. Accord Collett v. Steigerwald*, 2d Dist. Montgomery No. 22028, 2007-Ohio-6261, ¶ 33.

{¶ 36} In its decision, the trial court held that no attorney-client relationship existed because Guehl lacked a reasonable belief that limited conversations with Kaman concerning Board matters created an attorney-client relationship. Doc. #135, pp. 9-10. Upon consideration, we agree with the trial court. Although Guehl did not mention

---

[1] This was not alleged in the complaint, but was asserted in memoranda. In the complaint, Guehl stated only that plaintiffs had served on the Board and, *in that capacity*, were Kaman's clients.

communications specifically in the complaint, a reasonable inference from the complaint is that Carillon's law firm communicated with members of the Board.

**{¶ 37}** This is based on the fact that "a body corporate must act through agents, simply because it cannot function in any other manner." *William Coale Dev. Co. v. Kennedy*, 121 Ohio St. 582, 586, 170 N.E. 434 (1930). *See also Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 627, 605 N.E.2d 936 (1992) (stressing that "[a]s an artificial person, a corporation does not speak on its own, but, rather, only through the authorized acts of its agents or alter egos, the officers charged with its management"). Thus, Kaman could not discuss legal matters with Carillon; the only way to communicate was through Board members or officers. The mere fact of communication in these circumstances, even if involving legal advice, fails to establish an attorney-client relationship, and a reasonable person would not conclude otherwise.

**{¶ 38}** We also note that both *Hardiman* and *Collett* involved individuals, rather than corporate entities. In *New Destiny Treatment Ctr., Inc. v. Wheeler*, 129 Ohio St.3d 39, 2011-Ohio-2266, 950 N.E.2d 157, attorneys had been hired by a dissident shareholder who had improperly taken over a corporation. Subsequently, the corporation sued these attorneys for malpractice, alleging that "they had breached their obligations as attorneys and had negligently represented that a quorum had been present" at a board meeting. *Id.* at ¶ 17. This representation about the quorum was later found to be incorrect and had improperly allowed the dissident shareholder to oust other board members and take over the corporation. *Id.* at ¶ 16-17.

**{¶ 39}** When considering the issue of whether the corporation could sue the attorneys, the court noted the general principle about looking to the intentions of the

attorney and a prospective client. *Id.* at ¶ 26. In this regard, the court stated that:

> However, in this case, the putative client is a corporate entity, and an attorney employed or retained by a corporation represents the organization acting through its constituents; the attorney does not owe allegiance to a stockholder, director, officer, or other person connected with the corporation. Prof.Cond.R. 1.13(a); former EC 5-19. Thus, because a corporate attorney represents the organization acting through its agents, *id.*, in order to form an attorney-client relationship with a corporation, the party hiring counsel on behalf of the corporation must necessarily have authority to do so and must reasonably believe that an attorney-client relationship has been established.

*Id.* at ¶ 27.

**{¶ 40}** The Supreme Court of Ohio then held that the corporation could not assert a malpractice claim against the attorneys because no one with authority to employ counsel had retained the attorneys, and no corporate resolution to that effect existed. *New Destiny*, 129 Ohio St.3d 39, 2011-Ohio-2266, 950 N.E.2d 157, at ¶ 28. In addition, the dissident shareholder had previously been relieved of authority and lacked authority to hire counsel for the corporation. *Id.* The court also commented that no other constituent with authority to hire the attorneys had retained them. *Id.* at ¶ 29.

**{¶ 41}** Although the case before us presents a different situation, in that a member of a corporation is attempting to claim an attorney-client relationship, the instructive part of *New Destiny* is that corporate attorneys represent the corporation, not other persons connected to the corporation. Such an attorney owes allegiance to the corporation and

a board member should not reasonably expect that the attorney represents or owes allegiance to that party.

**{¶ 42}** Accordingly, the trial court correctly concluded that Guehl failed to establish the existence of an attorney-client relationship.

(ii)   Privity

**{¶ 43}** Since no attorney-client relationship existed, Guehl would have had to show that he was in privity with Carillon.   *Shoemaker*, 118 Ohio St.3d 226, 2008-Ohio-2012, 887 N.E.2d 1167, at ¶ 9.   Privity is defined as " '[t]he connection or relationship between two parties, each having a legally recognized interest in the same subject matter.' "   *Id.* at ¶ 10, quoting Black's Law Dictionary 1237 (8th Ed.2004).   The trial court found a lack of privity because the interests of Carillon and Guehl could not be deemed to be concurrent.   This is consistent with applicable legal authority.   *See, e.g.*, *Omega Riggers*, 2016-Ohio-2961, 65 N.E.3d 210, at ¶ 51 (Fain, J., dissenting) (noting that privity exists where the client and third party share concurrent interests or mutuality of interest); *Ryan v. Wright*, 10th Dist. Franklin No. 06AP-962, 2007-Ohio-942, ¶ 9.

**{¶ 44}** Guehl contends that the trial court erred concerning this point by making a finding of fact that was outside the pleadings, while ignoring factual evidence that Guehl presented in responding to Kaman's motion to dismiss.   In this regard, Civ.R. 12(B) allows trial courts to treat motions to dismiss as motions for summary judgment, where matters outside the pleadings are presented and the court does not exclude the materials.   Courts have discretion in deciding "whether to convert a Civ.R. 12(B)(6) motion to a summary-judgment motion, but in most instances a court should exclude matters outside the pleadings."   *Coors v. Fifth Third Bank*, 1st Dist. Hamilton No. C-050927, 2006-Ohio-

4505, ¶ 10, citing *Eulrich v. Weaver Bros.*, 165 Ohio App.3d 313, 2005-Ohio-5891, 846 N.E.2d 542, ¶ 11 (3rd Dist.).   An abuse of discretion " 'implies that the court's attitude is unreasonable, arbitrary or unconscionable.' "   (Citations omitted.)   *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 45} Given the above discussion, the trial court had discretion to exclude any factual materials Guehl submitted, and we find no abuse of discretion in the court's decision.   As was noted, in most instances, trial courts will exclude such materials.   Furthermore, the trial court did not consider matters outside the pleadings when deciding the motion.

{¶ 46} After analyzing the law pertinent to the privity issue the trial court concluded that the interests of Guehl and Carillon clearly might diverge with respect to the issue of reserve funding, special assessments, and maintenance of property.   After reviewing the complaint, we agree.   As a fundamental matter, Guehl brought this action because he disagreed with Carillon's action or inaction on many matters, including budgeting, property maintenance, supervision of construction, management practices, oversight of its property manager, assessments, and reserve studies.   Second Amended Complaint, Doc. # 110, pp. 5-7, and 10-13.   The interests of Carillon and Guehl are clearly neither concurrent nor mutual, and that is apparent on the face of the complaint.

{¶ 47} In arguing that the trial court erred, Guehl's brief also relies on Judge Fain's dissent on privity in *Omega Riggers*, in which the judge said he would reverse the summary judgment and remand the case, because " '[t]here is a genuine issue of material fact in this case whether Koverman [attorney] committed an act or acts of malpractice, before January 1, 2007, that had the proximate result of injuring the plaintiffs.' "   Merit

Brief of Plaintiffs-Appellants, p. 7, quoting *Omega Riggers*, 2016-Ohio-2961, 65 N.E.3d 210, at ¶ 49 (Fain, J., dissenting). Notably, this statement is in a dissent, not in the majority opinion. Nonetheless, Guehl omits a critical part of Judge Fain's remarks.

**{¶ 48}** In the part of the quotation that Guehl omitted, Judge Fain noted that "[a]n attorney is not vicariously liable for the torts of his client, but if the attorney commits malpractice *before January 1, 2007*, he is liable for injuries to a person in privity with his client proximately caused by his malpractice." (Emphasis added.) *Id.* The footnote accompanying this statement states that "[f]or malpractice accruing on or after that date, R.C. 1705.61 or R.C.1701.921 *precludes liability to a non-client.*" (Emphasis added.) *Id.* at ¶ 49, fn.4.

**{¶ 49}** R.C. 1701.921, which pertains to corporations and was effective in October 2006, states that:

> (A) Absent an express agreement to the contrary, a person providing goods to or performing services for a domestic or foreign corporation owes no duty to, incurs no liability or obligation to, and is not in privity with the shareholders or creditors of the corporation by reason of providing goods to or performing services for the corporation.

**{¶ 50}** In *Omega Riggers*, Judge Fain recognized in his dissent that "public policy has changed with regard to the relationship between entities and persons providing services to entities, who are now considered not in privity with the entity or individual members of that entity, unless a written agreement expressly establishes privity" (Citation omitted.) *Omega Riggers*, 2016-Ohio-2961, 65 N.E.3d 210, at ¶ 56 (Fain, J., dissenting). Judge Fain did say that it was not clear to him whether "the statutory

elimination of privity" was intended to apply strictly to breach of contract claims, or whether it "should also extend to tort claims based on negligent conduct." *Id.* He concluded that "[f]or an action alleging a lawyer's negligence, these statutes must also be read, *in para materia*, with common law tort principles, and the ethical duties imposed upon lawyers by statute and common law." (Emphasis sic.) *Id.* As a result, the judge reviewed certain sections of the Rules of Professional Conduct.

{¶ 51} First, Judge Fain focused on Prof. Cond. Rule 1.2, which prohibits corporate lawyers from counseling clients to engage in illegal or fraudulent conduct. Id. at ¶ 57. This rule is irrelevant to the case before us, as Kaman was not accused of such conduct.

{¶ 52} Judge Fain also focused on Prof. Cond. Rule 1.13 and its comments, which "recognize that an organizational client cannot act except through its constituents, including officers and shareholders." *Id.* at ¶ 58. He concluded, as a result, that "when acting on behalf of a corporation, an attorney will necessarily act under the direction of, and advance the interests of, the controlling shareholder or officer." *Id.* Again, this is not relevant to the case before us, as Carillon was not a closely held corporation, with controlling and minority shareholders.

{¶ 53} Judge Fain recognized that Ohio had chosen "not to recognize a civil action for aiding and abetting tortious conduct," and had not adopted the Restatement (2d) of Torts, § 876 [which involves corporate lawyer liability for aiding and abetting breaches of fiduciary duty]. *Omega Riggers*, 2016-Ohio-2961, 65 N.E.3d 210, at ¶ 58-59, citing *DeVries Dairy, L.L.C. v. White Eagle Coop. Assn.*, Inc., 132 Ohio St.3d 516, 2012-Ohio-3828, 974 N.E.2d 1194. Nonetheless, based on case law that existed *before* statutory changes in this area in 2006 and 2007, Judge Fain concluded that the majority

stockholder of the closely held corporation owed a heightened duty to the minority shareholder, and that "the attorney retained by the majority shareholder/fiduciary for the corporation owed a similar duty to that minority shareholder, creating privity between the attorney's corporate client and the minority shareholder." *Id.* at ¶ 63.   Again, this is not relevant for purposes of the present case.

{¶ 54} Judge Fain was careful to stress the narrow scope of his discussion, by stating that:

> My conclusion in this case is limited to actions taken by corporate counsel
> in relation to minority shareholders of a closely held corporation prior to the
> statutory changes that limit the liability of service providers by eliminating
> privity between service providers and third persons.  Whether privity can
> be established between a corporate lawyer and a minority shareholder
> based on tortious conduct occurring after the statutory changes is a legal
> issue that can only be addressed in a future case.

*Omega Riggers* at ¶ 63 (Fain, J., dissenting).

{¶ 55} Unlike *Omega Riggers*, the case before us does not involve an attorney's employment by a majority shareholder in a closely held corporation or a breach of fiduciary duty to disenfranchise a minority shareholder.   As a result, most of Judge Fain's comments and conclusions about privity are simply not relevant to the situation before us.

{¶ 56} This case does involve events that occurred after R.C. 1701.921 was adopted in 2006.   R.C. 1701.921 provides that persons performing services for corporations are not in privity with shareholders in the absence of an express agreement.

Whether this statute extends to tort actions, as Judge Fain discussed, is not something we need to decide for purposes of the present case, as we agree with the trial court that no privity existed due to lack of concurrent interests, and there is no basis for privity under our majority decision in *Omega Riggers*. This case does not even remotely approach the circumstances that Judge Fain's dissent addressed.

{¶ 57} We further note that R.C. 1701.921 does indicate a lack of intent to extend privity. This is consistent with the majority decision in *Omega Riggers*, which stated that "[s]ignificantly, there is no Ohio case that has extended the privity concept to allow a shareholder, who does not have a direct attorney-client relationship with corporate counsel, to sue a corporation's attorney for malpractice. We do not believe we should create one." *Omega Riggers*, 2016-Ohio-2961, 65 N.E.3d 210, at ¶ 28.

{¶ 58} Furthermore, as was noted, the Supreme Court of Ohio recently stressed that corporate attorneys represent the organization and do not owe allegiance to stockholders, directors, or other persons associated with the corporation. *New Destiny*, 129 Ohio St.3d 39, 2011-Ohio-2266, 950 N.E.2d 157, at ¶ 27, citing Prof. Cond. Rule 1.13.

{¶ 59} As a final matter, Guehl contends that Kaman has ignored the fact that dual representation is a recognized "practice risk." As support, Guehl cites cases pertaining to issues with dual representation. Guehl also argues that Kaman has violated rules pertaining to "candor toward the tribunal," by failing to cite such adverse cases and the full text of Prof. Cond. R. 1.13 in its brief. We disagree that any such violation occurred.

{¶ 60} In the first place, some cases that Guehl cites are inapplicable and some statements in cited cases are taken out of context. As an example, the court did say in

*State v. Clark*, 8th Dist. Cuyahoga No. 87938, 2007-Ohio-713 (in a criminal context), that "[d]ual representation is not a per se violation of due process." (Citations omitted.) *Id.* at ¶ 12. However, the court also followed that remark by commenting that "dual representation can [possibly] work to the advantage of the clients in cases when they mount a common defense against charges." *Id.*

{¶ 61} Due process has many requirements in criminal cases, including the right to assistance of counsel, *State v. Gibson*, 45 Ohio St.2d 366, 376, 345 N.E.2d 399 (1976), and that "the state establish beyond a reasonable doubt every fact necessary to constitute the crime charged." (Citation omitted.) *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶ 36. It also requires " 'a jury capable and willing to decide the case solely on the evidence before it,' " *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, ¶ 42, quoting *Smith v. Phillips*, 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982), and provision of counsel and transcripts to indigent parents in parental termination cases. *State ex rel. Heller v. Miller*, 61 Ohio St.2d 6, 399 N.E.2d 66 (1980).

{¶ 62} In contrast, due process in civil cases requires only notice and an opportunity to be heard. *See, e.g., Ohio Valley Radiology Assoc., Inc. v. Ohio Valley Hosp. Assn.*, 28 Ohio St.3d 118, 124, 502 N.E.2d 599 (1986). Additionally, "[t]here is no generalized right of counsel in civil litigation." *State ex rel. Jenkins v. Stern*, 33 Ohio St.3d 108, 110, 515 N.E.2d 928, 930 (1987).

{¶ 63} However, a due process argument is beside the point. Due process has little application in situations occurring prior to litigation, except where it may be required, for example, as part of the process of terminating employment. *See, e.g., Ohio Assn. Of*

*Public School Emp. AFSCME, AFL-CIO v. Lakewood City School Dist. Bd. Of Edn.*, 68 Ohio St.3d 175, 624 N.E.2d 1043 (1994). Thus, the fact that an attorney has represented more than one party prior to litigation would not violate due process. It could violate ethical rules, but it would not violate due process.

**{¶ 64}** Similarly, *Highland Business Park, LLC v. Grubb & Ellis Co.*, 8th Dist. Cuyahoga No. 85225, 2005-Ohio-3139, another case cited by Guehl, is irrelevant, as it did not even involve attorneys; the case involved "dual representation" by real estate brokers. *Id.* at ¶ 1-8.

**{¶ 65}** There is no question that "[t]he primary purpose behind the prohibition in [ethical rules] against dual representation of clients with adverse interests is to ensure that confidences or secrets of a client imparted to an attorney in the course of their attorney-client relationship will not be revealed to an adverse party or used to the client's disadvantage." *Kelley v. Buckley*, 193 Ohio App.3d 11, 2011-Ohio-1362, 950 N.E.2d 997, ¶ 26 (8th Dist.), citing former DR 5-105.[2] The comments to Prof. Cond. Rule 1.7 also stress, among other things, that "[t]he principles of loyalty and independent judgment are fundamental to the attorney-client relationship and underlie the conflict of interest provisions of these rules." However, the case before us does not involve dual representation. Guehl did not have an attorney-client relationship with Kaman, nor was Guehl in privity with Carillon, who was Kaman's client.

**{¶ 66}** Based on the preceding discussion, we find no error in the trial court's decision. Accordingly, Guehl's sole assignment of error is overruled.

---

[2] DR 5-105 was part of the Ohio Code of Professional Responsibility, which was superseded in 2007 by the Ohio Rules of Professional Conduct. Conflicts of interest are now covered in Prof. Cond. Rules 1.7, 1.8, 1.9, and 1.10.

**{¶ 67}** As a housekeeping matter, we note that Guehl filed a motion to strike Kaman's motion for leave to file a sur-reply brief and the sur-reply brief. The motion was filed on April 18, 2017, but we had already ruled on April 14, 2017, that the sur-reply brief could be filed. See *Guehl v. Carillon House Assn., Inc.*, 2d Dist. Montgomery No. 24738 (Apr. 14, 2017). The motion to strike raises issues we have rejected, like Kaman's failure to cite relevant adverse authority. Based on the discussion in this opinion, we find the motion to strike is not well-taken, and it is overruled.

### III. Conclusion

**{¶ 68}** Guehl's sole assignment of error having been overruled, the judgment of the trial court is affirmed. Guehl's motion to strike is also overruled.

. . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.

Copies mailed to:

Robert L. Guehl
Robert E. Kmiecik
Garrett B. Humes
David Ahlstrom
Benjamin Maraan
John Phillips
Anthony Holman
Anne Keeton
Evelyn Davidson
Hon. Dennis J. Langer